# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JIM CHAPMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>   v.<br><br>FENNEC PHARMACEUTICALS INC., ROSTISLAV RAYKOV, ROBERT ANDRADE, CHRIS A. RALLIS, MARCO BRUGHERA, ADRIAN J. HAIGH, KHALID ISLAM, and JODI COOK,<br><br>          Defendants. | **REPLY IN SUPPORT OF THE FENNEC DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT**<br><br>Case No. 1:20-cv-00812-LCB-JLW<br><br>Judge Loretta Copeland Biggs<br>Magistrate Judge Joe L. Webster<br><br><br>Oral Argument Requested |

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 1

I. THE PSLRA SAFE HARBOR PRECLUDES LIABILITY FOR DEFENDANTS' FORWARD-LOOKING STATEMENTS ................................... 1

    A. Defendants' Forward-Looking Statements Were Identified and Accompanied by Meaningful Cautionary Language ................................... 1

    B. Defendants' Forward-Looking Statements Were Not Made With Actual Knowledge of Falsity ................................................................. 3

    C. Plaintiff's Other Arguments Are Not Persuasive ....................................... 3

II. PLAINTIFF FAILS TO PLEAD WITH PARTICULARITY A FALSE OR MISLEADING STATEMENT OR ACTIONABLE OMISSION ......................... 5

    A. Plaintiff Fails To Plead with Particularity a False or Misleading Statement ..................................................................................................... 5

        1. Statements About Drug Substance Manufacturing ........................... 5

        2. Statements About Commercial Readiness ......................................... 5

        3. Statement About FDA Acceptance of NDA and Priority Review Being Significant Milestone ................................................... 6

        4. Statements About Risks Faced by Fennec ........................................ 6

        5. SOX Certifications ............................................................................ 7

    B. Plaintiff Fails To Plead with Particularity an Actionable Omission ............. 7

        1. No Actionable Omission About Drug Substance Manufacturer in 2018 ............................................................................................... 7

        2. No Actionable Omission About Drug Product Manufacturer in 2019 and 2020 ................................................................................. 9

III. PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER ............................................................................................................ 11

i

A. No Particularized Allegations as to State of Mind of Defendants .............. 11

B. Allegations of Negligence Do Not Support a Strong Inference of Scienter .................................................................................................. 12

C. Fraud by Hindsight Does Not Support a Strong Inference of Scienter .................................................................................................. 12

D. Lack of Motive Undermines An Inference of Scienter .............................. 13

E. The Non-Culpable Inference Is More Compelling ..................................... 13

IV. PLAINTIFF FAILS TO STATE A CLAIM AGAINST ANY DIRECTOR ......... 14

V. PLAINTIFF'S SECTION 20(a) CLAIM SHOULD BE DISMISSED.................. 14

VI. THE REQUEST FOR JUDICIAL NOTICE SHOULD BE GRANTED .............. 14

CONCLUSION ......................................................................................................... 15

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**CASES**

*Ash v. PowerSecure Int'l, Inc.*,
No. 4:14-cv-92-D, 2015 WL 5444741 (E.D.N.C. Sept. 15, 2015) ...................... 2, 8

*Cozzarelli v. Inspire Pharms. Inc.*,
549 F.3d 618 (4th Cir. 2008) .................................................................................. 13

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*,
594 F.3d 783 (11th Cir. 2010) .................................................................................. 3

*Eriline Co. S.A. v. Johnson*,
440 F.3d 648 (4th Cir. 2006) .................................................................................. 15

*Freedman v. Saint Jude Med., Inc.*,
4 F. Supp. 3d 1101 (D. Minn. 2014) ......................................................................... 6

*Harris v. Ivax Corp.*,
182 F.3d 799 (11th Cir. 1999) .................................................................................. 4

*Helwig v. Vencor, Inc.*,
251 F.3d 540 (6th Cir. 2001) .................................................................................... 3

*In re Constellation Energy Grp., Inc. Sec. Litig.*,
738 F. Supp. 2d 614 (D. Md. 2010) .......................................................................... 6

*In re Discovery Labs. Sec. Litig.*,
No. 06-1820, 2007 WL 789432 (E.D. Pa. March 15, 2007),
*aff'd*, 276 F. App'x 154 (3d Cir. 2008) ............................................................... 3, 12

*In re Dura Pharms., Inc. Sec., Litig.*,
548 F. Supp. 2d 1126 (S.D. Cal. 2008) ..................................................................... 2

*In re EDAP TMS S.A. Sec. Litig.*,
No. 14 CIV. 6069 LGS, 2015 WL 5326166
(S.D.N.Y. Sept. 14, 2015) ...................................................................................... 10

*In re Genworth Fin. Inc. Sec. Litig.*,
103 F. Supp. 3d 759 (E.D. Va. 2015) ....................................................................... 4

*In re Lab. Corp. of Am. Holdings Sec. Litig.*,
No. 1:03CV591, 2006 WL 1367428 (M.D.N.C. May 18, 2006) ............................. 2

*In re Odyssey Healthcare, Inc. Sec. Litig.*,
424 F. Supp. 2d 880 (N.D. Tex. 2005) ..................................................................... 4

*In re SCANA Corp. Sec. Litig.*,
No. CV 3:17-2616-MBS, 2019 WL 1427443 (D.S.C. Mar. 29, 2019) ................... 2

iii

*In re Trex Co., Inc. Sec. Litig.*,
    454 F. Supp. 2d 560 (W.D. Va. 2006)......................................................................... 8

*In re VeriFone Holdings, Inc. Sec. Litig.*,
    704 F.3d 694 (9th Cir. 2012) .................................................................................... 13

*Janus Capital Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011) ................................................................................................. 14

*Johnson v. Pozen, Inc.*,
    No. 1:07CV599, 2009 WL 426235 (M.D.N.C. Feb. 19, 2009) ....................... 3, 4, 5

*Klein v. Altria Group, Inc.*,
    No. 3:20 CV 275 (DJN), 2021 WL 955992 (E.D. Va. Mar. 12, 2001)................. 11

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) ...................................................................................... 2

*Love v. Donahoe*,
    No. 1:10CV980, 2012 WL 3595105 (M.D.N.C. Aug. 20, 2012).................... 14, 15

*Makor Issues & Rts., Ltd. v. Tellabs Inc.*,
    513 F.3d 702 (7th Cir. 2008) .................................................................................... 14

*Ollila v. Babcock & Wilson Enterprises, Inc.*,
    No. 3:17-cv-109, 2018 WL 792069 (W.D.N.C. Feb. 08, 2018) ........................... 12

*Owens v. Jastrow*,
    789 F.3d 529 (5th Cir. 2015) .................................................................................... 13

*Plymouth Cty. Ret. Ass'n v. Primo Water Corp.*,
    966 F. Supp. 2d 525 (M.D.N.C. 2013)............................................................. 2, 4, 9

*Raab v. Gen. Physics Corp.*,
    4 F.3d 286 (4th Cir. 1993)........................................................................................... 6

*Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*,
    365 F.3d 353 (5th Cir. 2004) .................................................................................... 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ........................................................................................... 13, 15

*TransEnterix Inv'r Grp. v. TransEnterix, Inc.*,
    272 F. Supp. 3d 740 (E.D.N.C. 2017)........................................................................ 3

*Vaitkuviene v. Syneos Health, Inc.*,
    No. 5:18-CV-29-H-KS, 2020 WL 5742714 (E.D.N.C. Aug. 7, 2020) ................. 15

*Yates v. Mun. Mortg. & Equity*,
    744 F.3d 874 (4th Cir. 2014)................................................................................... 12

*Zak v. Chelsea Therapeutics Intern, Ltd.*,
    780 F.3d 597 (4th Cir. 2015)................................................................................... 15

iv

## STATUTES

15 U.S.C. § 78u-5(e) ............................................................................................ 3

Private Securities Litigation Reform Act, Pub. L. 104-67, 109 Stat. 737 ........................... 1

## RULES

17 C.F.R. § 240.10b-5 ........................................................................................ 13

Federal Rule of Civil Procedure 9(b) ............................................................... 1, 7

M.D.N.C. Local Rule 7.3(f) ............................................................................... 14

M.D.N.C. Local Rule 7.3(k) .............................................................................. 14

## MISCELLANEOUS

Restatement (Third) of Agency, § 5.03, comment d(2) (2006) ......................................... 13

v

<u>**INTRODUCTION**</u>

Plaintiff's Complaint does not allege with particularity the existence of a false and misleading statement, nor does it allege that Raykov and Andrade or anyone else at Fennec acted with a strong inference of scienter, falling far short of the "stringent" requirements of the Private Securities Litigation Reform Act ("PSLRA") and Rule 9(b). The Opposition omits the intensive statement-by-statement analysis required to allege a federal securities claim and instead relies on two generalized theories of omission: (i) that Statement 1 was false and misleading because it omitted the alleged fact that Fennec's 2018 drug substance manufacturer could not manufacture the drug substance in commercial quantities, and (ii) that Statements 2 to 20 were false and misleading because they omitted that Fennec's 2020 drug product manufacturer had received Form 483s in the past. Opp. 1, 20, 22. Neither theory states a claim for fraud. The Opposition barely addresses the arguments and authority cited in the Memorandum, instead relying significantly on unpublished, out-of-Circuit authority and various arguments of last resort. The Complaint should be dismissed with prejudice.

<u>**ARGUMENT**</u>

**I.     THE PSLRA SAFE HARBOR PRECLUDES LIABILITY FOR DEFENDANTS' FORWARD-LOOKING STATEMENTS**

**A.     Defendants' Forward-Looking Statements Were Identified and Accompanied by Meaningful Cautionary Language**

The Opposition effectively concedes that Statements 1, 3, 9, 17 and 20 are forward-looking. Opp. 17-21. It argues that cautionary language did not accompany the statements

1

because Fennec's safe harbor warnings did not refer investors to specific passages within its risk factors, Opp. 20 n.6, but such pinpoint specificity is not required. *See Ash v. PowerSecure Int'l, Inc.*, No. 4:14-cv-92-D, 2015 WL 5444741, at *8 (E.D.N.C. Sept. 15, 2015) (statements in press release referring investors to company's Form 10-K protected by safe harbor); *Plymouth Cty. Ret. Ass'n v. Primo Water Corp.*, 966 F. Supp. 2d 525, 550 (M.D.N.C. 2013) (same); *In re Lab. Corp. of Am. Holdings Sec. Litig.*, No. 1:03CV591, 2006 WL 1367428, at *6 (M.D.N.C. May 18, 2006) (same).[1]

The Opposition claims that Fennec's cautionary language was "boilerplate," Opp. 19-20, but boilerplate is "'[t]his is a forward-looking statement: caveat emptor,'" *Lab. Corp.*, 2006 WL 1367428, at *5 (citation omitted), or "[t]hese forward-looking statements involve numerous risks, uncertainties and assumptions, and actual results could differ materially from anticipated results," *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 245 (5th Cir. 2009) (citation omitted). Fennec's disclosures went well beyond these generalities. Mem. 11-12. Far less detailed language has been found to be meaningful and warrant dismissal under the safe harbor. *Primo Water*, 966 F. Supp. 2d at 550; *Lab. Corp.*, 2006 WL 1367428, at *4.[2]

---

[1] Plaintiff cites *In re Dura Pharms., Inc. Sec., Litig.*, 548 F. Supp. 2d 1126, 1143-44 (S.D. Cal. 2008), but it appears to be the outlier.

[2] This case is nothing like *In re SCANA Corp. Sec. Litig.*, No. CV 3:17-2616-MBS, 2019 WL 1427443 (D.S.C. Mar. 29, 2019), because here there are no allegations of internal knowledge by Defendants of Avista's supposed inability to manufacture PEDMARK™ or PII's likelihood of receiving a Form 483 related to PEDMARK™. Even more, *SCANA* involved delays to the defendant's own operations, not a third party's.

### B. Defendants' Forward-Looking Statements Were Not Made With Actual Knowledge of Falsity

Statements 1, 3, 9, 17 and 20 are protected under the second prong of the safe harbor because there is nothing in the Complaint to support an inference of actual knowledge. Mem. 12-13. The Opposition suggests in passing that Defendants had "actual knowledge of the shortcomings of Fennec's manufacturers," Opp. 21, but to plead actual knowledge of falsity, Plaintiff needs to allege with particularity that Defendants did not believe the PEDMARK™ approval targets and commercial launch projections when they gave them, *In re Discovery Labs. Sec. Litig.*, No. 06-1820, 2007 WL 789432, at *6 (E.D. Pa. March 15, 2007), *aff'd*, 276 F. App'x 154 (3d Cir. 2008). The Complaint contains no such allegations.

### C. Plaintiff's Other Arguments Are Not Persuasive

Otherwise, the Opposition takes a kitchen-sink approach to the safe harbor argument. First, the Opposition suggests that the application of the safe harbor involves factual determinations that cannot be resolved at the pleading stage. Opp. 17. That is not the law. The safe harbor statute applies, by its terms, at the pleading stage. *See* 15 U.S.C. § 78u-5(e); *Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 594 F.3d 783, 794 (11th Cir. 2010) (Section 78u-5(e) "permit[s] consideration of cautionary statements on a motion to dismiss"); *Helwig v. Vencor, Inc.*, 251 F.3d 540, 554 (6th Cir. 2001) (same). And there are myriad cases applying the safe harbor at the pleading stage. *See TransEnterix Inv'r Grp. v. TransEnterix, Inc.*, 272 F. Supp. 3d 740, 757-58 (E.D.N.C. 2017); *Johnson v.*

3

*Pozen, Inc.*, No. 1:07CV599, 2009 WL 426235, at \*21-22 (M.D.N.C. Feb. 19, 2009); *Primo Water*, 966 F. Supp. 2d at 549-52.[3]

Second, the Opposition suggests that the safe harbor does not apply to "representations of current or historical fact." Opp. 18. But the statements challenged here—*e.g.*, about "targeting U.S. approval ... in the second half of 2019," ¶111, or "plan[ning] to launch PEDMARK in the second half of 2020," ¶122, or "mak[ing] progress on ...[a] plan in preparation for [a] potential launch ... in the second half of 2020," ¶137— are clearly forward-looking.

Third, the Opposition suggests that the safe harbor "does not apply to omissions," Opp. 17-18, but the only federal appellate court to analyze the statutory language, legislative history and relevant SEC regulations has held that there is "no question" that the safe harbor applies to omissions. *Harris v. Ivax Corp.*, 182 F.3d 799, 806 (11th Cir. 1999); *see also In re Odyssey Healthcare, Inc. Sec. Litig.*, 424 F. Supp. 2d 880, 887 n.3 (N.D. Tex. 2005) (declining "to judicially graft [] an exception [for omissions] onto the statutory safe harbor"). This Court previously explained why: "[T]o accept Plaintiffs' argument would swallow the entire Safe Harbor provision of the PSLRA, as well as pre-existing Fourth Circuit law regarding forward-looking statements, because any claim based

---

[3] In *In re Genworth Fin. Inc. Sec. Litig.*, 103 F. Supp. 3d 759, 774 (E.D. Va. 2015), the allegedly forward-looking statements were tricky because they were statements about the "adequacy" of current insurance claim reserves.

4

on forward-looking statements can be characterized as a claim about omissions of existing facts." *Pozen*, 2009 WL 426235, at *22.

## II. PLAINTIFF FAILS TO PLEAD WITH PARTICULARITY A FALSE OR MISLEADING STATEMENT OR ACTIONABLE OMISSION

### A. Plaintiff Fails To Plead with Particularity a False or Misleading Statement

#### 1. Statements About Drug Substance Manufacturing

Statements 2, 7, and 8 were statements made by Fennec in 2019 about its drug substance manufacturer—allegedly Avista, ¶79, which merged with Cambrex in January 2019, ¶84. The Opposition does not establish why they were false or misleading. The statements were made concurrently or after the announcement of the post-merger site transition, and the Complaint does not allege any "problems" or deficiencies with the drug substance manufacturer after the merger. The Complaint does not allege that the combined Avista/Cambrex did not have large scale commercial capabilities and, in fact, concedes that it was compliant with cGMP. ¶114. Fennec's statements of confidence in its drug substance manufacturer in 2019 were not false or misleading due to cGMP deficiencies discovered in 2020 with its drug product manufacturer. Mem. 13-14.

#### 2. Statements About Commercial Readiness

The seven statements about commercial readiness (Statements 10-12, 17-20) were not false or misleading. Mem. 15-16. The Complaint acknowledges that Fennec hired a chief commercial officer, ¶128, made regulatory submissions in the E.U. and U.S., ¶95 n.35, and secured a $12.5 million senior debt facility for commercial activities after NDA

5

approval, ¶87.  Those are commercial readiness activities.  Mem. 15-16.  The Opposition does not respond.

### 3. Statement About FDA Acceptance of NDA and Priority Review Being Significant Milestone

Plaintiff does not even discuss Statement 16 in his Opposition, let alone rebut Defendants' arguments.  Mem. 16-17.  In their Memorandum, Defendants explained that Fennec's April 13, 2020 statement, that "FDA filing acceptance of our NDA and granting of Priority Review" was a "significant milestone in the development of PEDMARK," ¶135 (Statement 16), was not false or misleading when made.  Mem. 16-17.  The phrase "significant milestone" is too vague to be actionable.[4]  *Id*.  It also appears to be true.

### 4. Statements About Risks Faced by Fennec

The Complaint fails to allege with particularity that Fennec's publicly disclosed "Risk Factors" (Statements 4, 5, 13, 14) were false and misleading when issued.  Mem. 17-18.  As an initial matter, no reasonable investor would interpret them as a guarantee that the risks discussed therein had yet to occur (*id*.)—a point the Opposition does not address and Plaintiff thereby waives.

---

[4] The Opposition argues that "puffery" cannot be decided at the pleading stage because it is a materiality determination, Opp. 13, but Plaintiff's argument is inconsistent with clear Fourth Circuit precedent holding that puffery <u>can</u> be decided at the pleading stage, including *Raab v. Gen. Physics Corp*., 4 F.3d 286, 289 (4th Cir. 1993).  Plaintiff's own cases demonstrate this.  *See Freedman v. Saint Jude Med., Inc.*, 4 F. Supp. 3d 1101, 1113 (D. Minn. 2014); *In re Constellation Energy Grp., Inc. Sec. Litig.*, 738 F. Supp. 2d 614, 631 (D. Md. 2010).

Even if the risk factors were actionable in theory, the Complaint does not allege that the risks had already materialized by the time the relevant statements issued. *Id.* The challenged risk factors addressed the risk of "delays," ¶¶115, 130, and the risk that the FDA would find inadequate "the manufacturing processes or facilities of third-party manufacturers," ¶¶116, 131. The last warning was issued on February 14, 2020, approximately <u>five months before</u> PII's alleged receipt of an FDA Form 483 in July 2020, and <u>six months before</u> Fennec's receipt of a complete response letter. Mem. 18. Plaintiff does not respond.

### 5. SOX Certifications

The Complaint does not allege with the requisite particularity that the SOX certifications (Statements 6, 15) were false or misleading. Mem. 18.

### B. Plaintiff Fails To Plead with Particularity an Actionable Omission

#### 1. No Actionable Omission About Drug Substance Manufacturer in 2018

Under his first omissions theory, Plaintiff claims that when Fennec stated on December 20, 2018 that it was "targeting U.S. approval of PEDMARK in the second half of 2019," ¶111 (Statement 1), it should have also disclosed that Avista's Durham facility "lacked the capacity to manufacture PEDMARK for commercial use," Opp. 1, at least on a "large scale," ¶¶80, 82, that a site transition was "inevitable," and that the stated timeline was "untenable," Opp. 1. This argument fails for several reasons.

First, Plaintiff does not satisfy the "stringent" requirements for pleading falsity with particularity under Rule 9(b) and the PSLRA. Mem. 7-8. The Opposition claims that the

7

Durham facility "could not commercially manufacture PEDMARK," Opp. 14. but the "former Scientist" who worked at Durham <u>does not allege</u> that Avista and/or Cambrex could not commercially manufacture PEDMARK™ at any point in time, he/she merely states that Durham was an "analytic site" and not a "commercial manufacturing site" post-merger. ¶82. The "former Research Associate," who worked at Longmont, not Durham, said nothing about Fennec, PEDMARK™, or the manufacturing needs for PEDMARK™ commercialization. ¶82. While Plaintiff suggests a lack of "large scale" manufacturing capacity, Opp. 1, 15, the Complaint does not allege that PEDMARK™ required "large scale" production, and documents incorporated therein even suggest that Fennec was a "small batch producer," Ex. 14 at 1; *see also* Opp. 8 (relying on same PropThink article). Moreover, none of these former employees claim Avista could not manufacture sufficient quantities of the drug substance for transmittal to PEDMARK™'s finished product manufacturer.

Second, the confidential witness ("CW") allegations are not sufficiently based on personal knowledge. *In re Trex Co., Inc. Sec. Litig.*, 454 F. Supp. 2d 560, 573, 581 (W.D. Va. 2006) (discussing relevant factors). Here, none of Plaintiff's CWs worked at Fennec or on the PEDMARK™ project. *PowerSecure*, 2015 WL 5444741, at *13 (disregarding allegations of CW with no personal knowledge of relevant project). The "former Scientist" says only that he/she "was aware that PEDMARK was a compound that Cambrex was working on," and the other two barely mention PEDMARK™ at all, ¶81. Two of the CWs did not work at the Durham facility and thus could not credibly opine on the activities at

that facility, ¶81, as the Opposition concedes that the CWs' knowledge is limited to the sites where they worked. Opp. 27 (CWs "described … the sites where they worked"; and "have knowledge about Avista's manufacturing capabilities and activities at those sites"). Finally, the CWs all worked at post-merger Avista/Cambrex, not pre-merger Avista, ¶81, and thus cannot and do not speak to what was happening at the Durham facility prior to the merger, *see Primo Water*, 966 F. Supp. 2d at 544 (discounting allegations of poorly positioned CWs).

Third, even if Plaintiff had alleged the necessity of a site transition, he would still have failed to allege an actionable omission because he does not allege that a site transition was incompatible with Fennec's stated target date. Opp. 5; ¶84. Plaintiff cites ¶¶36-44 and ¶83, but none of those allegations make his point, ¶39 ("3 to 12 months" of SSS data needed); ¶40 ("about 3 months"); ¶41 (no additional data needed); ¶83 (Fennec needed "up to 6 months" of SSS data after Avista/Cambrex combination). Even if Defendants needed the full 6 months of SSS data after the acquisition closed on January 2, 2019, ¶84, that would leave at least 6 months, until December 31, 2019, for PEDMARK™ to obtain FDA approval after submitting its 6 months of new SSS data. The Complaint does not explain why FDA approval could not be obtained in the following 6 months. ¶50 (FDA acts within 6 months on priority review NDAs).

### 2. No Actionable Omission About Drug Product Manufacturer in 2019 and 2020

Plaintiff's second theory of omission is that when Fennec issued Statements 2 to 20, it should have also disclosed that its drug product manufacturer (allegedly Pharmaceutics

9

International, Inc. ("PII") (¶¶104-06; Opp. 7 n.4)) had received Form 483s in the past on other projects unrelated to Fennec or PEDMARK™, ¶¶105, 107, allegedly seventeen over a ten-year period, Opp. 7 (citing ¶104). From this alone, Plaintiff declares that Defendants should have known that PII would "likely not pass" its July 2020 FDA inspection, ¶89. Plaintiff fails to plead an actionable omission.

First, the Complaint does not allege that Fennec had a duty to disclose the fact that PII had received Form 483s, "[e]very year from 2009 to 2018," Opp. 10. Plaintiff does not explain how this rate of Form 483s was unusual for a company of PII's size: it does not allege how many Form 483s are issued annually, how many drugs PII was developing, how many facilities were impacted, whether any of these Form 483s related to a facility, a drug, or a process at PII that related in any way to PEDMARK™. The Complaint does not say. Plaintiff claims that Defendants "touted" Fennec's drug product manufacturer to the public, Opp. 1, 7, 11, 12, but Plaintiff is mistaken.[5] And mere mention of an approval or commercial launch goal does not trigger unlimited disclosure regarding manufacturing. *See In re EDAP TMS S.A. Sec. Litig.*, No. 14 CIV. 6069 LGS, 2015 WL 5326166, at *11 (S.D.N.Y. Sept. 14, 2015) (not every mention of topic triggered unlimited disclosure).

---

[5] Plaintiff's cases, Opp. 16, are not to the contrary, as in nearly every case, the nondisclosure of a Form 483 was actionable only because the company had affirmatively stated it was cGMP or FDA compliant. Moreover, in each of these cases, the defendant companies manufactured their own products and thus the Form 483s related to their own facilities, not those of a third party.

10

Second, the Complaint does not allege that Fennec was obligated to disclose the existence of PII's alleged July 10, 2020 Form 483 earlier than it did. The circumstances here indicate it was impossible for Defendants to have known of the Form 483 until it was received by PII, ¶99, and Fennec disclosed it <u>just 24 days later</u>, on August 11, 2020, ¶9. Form 483s need not be immediately disclosed since they are not the final word by the FDA and manufacturers have two weeks to respond and await a final FDA decision. Mem. 22-23. The Opposition does not even address this or acknowledge the timing issues.[6]

## III. PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER

### A. No Particularized Allegations as to State of Mind of Defendants

The Complaint fails to plead any particularized facts as to the state of mind of Raykov or Andrade or anyone else at Fennec at the time the challenged statements were made. Mem. 23-24. None of Plaintiff's CWs were ever in contact with the Individual Defendants or communicated with them in any way, and Plaintiff does not cite a single conversation, email, letter, memorandum or other document contradicting any statement made by Defendants during the purported class period. Mem. 24 (citing cases). The Complaint pleads no facts to support the notion that Defendants were aware that Avista/Cambrex could not produce commercial quantities of the API in late 2018, and it

---

[6] Plaintiff's authority, again, dealt with allegations not present here. Opp. 12-13. *Klein v. Altria Group, Inc.* involved an e-cigarette company that touted it was "committed" to solving the "serious problem" of e-cigarette use by minors, while simultaneously advertising on children's websites such as Cartoon Network and presenting at high schools on the safety of the company's products. No. 3:20 CV 275 (DJN), 2021 WL 955992, at *2, 11 (E.D. Va. Mar. 12, 2001).

11

pleads no facts that Defendants were aware of PII's prior Form 483s or any of the conditions listed therein.[7] Mem. 24.

**B.      Allegations of Negligence Do Not Support a Strong Inference of Scienter**

The Complaint alleges Defendants simply "should have known" Avista was incapable of manufacturing PEDMARK™, ¶¶78, 83, and that Defendants "should" have "conducted" a "deep-dive quality audit" into PII's manufacturing practices, ¶97. At best this pleads inactionable negligence, but certainly not fraud. Mem. 25 (citing *Discovery Labs.*).

**C.      Fraud by Hindsight Does Not Support a Strong Inference of Scienter**

Plaintiff argues in the Opposition that the complete response letter was "inevitable," Opp. 1, and the schedule "untenable," Opp. 1, 6, but this is the language of fraud-by-hindsight. When one gets beyond that hindsight inference, Plaintiff's support for "inevitability' or "untenability" is exceedingly weak.[8]

---

[7] With no particularized allegations as to the state of mind of the Individual Defendants, Plaintiff argues that knowledge can be imputed because PEDMARK™ was "core to Fennec's business." Opp. 23-24. But "'bare allegations'" that executives must have known of key facts regarding "'core operations'" are rarely sufficient. *See Yates v. Mun. Mortg. & Equity*, 744 F.3d 874, 890 (4th Cir. 2014) (citation omitted). Just because PEDMARK™ was core to Fennec's business does not mean that everything about PEDMARK™ was known to Raykov and Andrade. Indeed, it is ironic that Plaintiff argues that drug manufacturing, something Fennec outsourced to third parties, was core to Fennec's operations. None of Plaintiff's cases support this notion.

[8] Plaintiff cites *Ollila v. Babcock & Wilson Enterprises, Inc.*, No. 3:17-cv-109, 2018 WL 792069 *4 (W.D.N.C. Feb. 08, 2018), but that case had a "host" of credible CWs who alleged that "monthly reports" were "regularly provided" to high-level management indicating "significant" issues. The Complaint here alleges zero averments of how

### D. Lack of Motive Undermines An Inference of Scienter

The Complaint is devoid of a single well-pled allegation suggesting an individual or corporate motive. Mem. 26. The Opposition suggests that Defendants were "motivated" to "sell the Company" or "secure financing," Opp. 29 (citing ¶¶87, 98), or "increase their compensation," Opp. 29 (citing ¶88), but it does not address controlling Fourth Circuit authority like *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 627 (4th Cir. 2008), which holds that such generic motives "add little to an inference of fraud."

### E. The Non-Culpable Inference Is More Compelling

When "all" allegations are considered "holistically,"[9] *Tellabs*, 551 U.S. at 326, the more compelling inference is that Defendants did not know and could not have predicted that PII would fail the inspection until it did in July/August 2020, and that Defendants' projections of targeted PEDMARK™ approval and commercial launch time frames were honest and accurate when made.[10] Mem. 26-27.

---

Defendants were intimately involved in either Avista's or PII's operations, or were provided <u>any</u> reports detailing significant issues regarding either company.

[9] The Opposition criticizes Defendants for analyzing individual aspects of Plaintiff's scienter claims before analyzing them holistically. Opp. 21, 25. This is unfounded. *See In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694 (9th Cir. 2012) ("[A]s a practical matter, some grouping and discussion of individualized allegations may be appropriate during a holistic analysis."); *Owens v. Jastrow*, 789 F.3d 529, 537 (5th Cir. 2015) (same). By engaging in a holistic analysis that includes weighing "plausible, nonculpable explanations," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007), Defendants are not thereby creating factual disputes or "admit[ting]" anything, Opp. 24.

[10] Plaintiff suggests that Fennec might be liable under a theory of "corporate scienter" even if he fails to plead scienter as to the Individual Defendants. Opp. 29-30. But this radically expanded theory of corporate scienter is foreclosed by the Restatement (Third) of Agency, § 5.03, comment d(2) (2006), and the text of Rule 10b-5. The prevailing view is

## IV. PLAINTIFF FAILS TO STATE A CLAIM AGAINST ANY DIRECTOR

The Opposition suggests that the Directors could be "makers" of press releases they did not sign because the releases incorporated language from SEC filings that they did sign. Opp. 30 n.10. But under *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011), the maker is the one with "ultimate authority" over the statement, and the Complaint does not allege that the Directors had ultimate authority over those releases. Regardless, the Complaint still pleads next to nothing about the Directors, making it impossible to see how Plaintiff could allege a strong inference of their scienter. Mem. 27-28.

## V. PLAINTIFF'S SECTION 20(A) CLAIM SHOULD BE DISMISSED

Plaintiff's Section 20(a) argument falls with his 10(b) argument. Mem. 30.

## VI. THE REQUEST FOR JUDICIAL NOTICE SHOULD BE GRANTED

On March 3, 2021, Defendants submitted a Request for Judicial Notice and Consideration for Incorporation of Documents by Reference in Consolidated Amended Complaint ("Request"), ECF No. 43. Plaintiff had until March 24 to respond, *see* M.D.N.C. Local Rule 7.3(f), but failed to do so, thereby waiving opposition, *see* M.D.N.C. Local Rule 7.3(k); *Love v. Donahoe*, No. 1:10CV980, 2012 WL 3595105, at *1 (M.D.N.C.

---

that "the required state of mind must actually exist in the individual making … the misrepresentation." *Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 366 (5th Cir. 2004). Some courts have held open the possibility of finding corporate scienter, but the scenario envisioned is extreme. *See Makor Issues & Rts., Ltd. v. Tellabs Inc.*, 513 F.3d 702, 710 (7th Cir. 2008) (describing "General Motors" scenario). Not here.

Aug. 20, 2012).  Plaintiff tries to slip a tardy response into a footnote of the Opposition, Opp. 3 n.2, but he does not address—let alone rebut—the argument and authority in the Request.  *Id*.  Plaintiff thus waives his opposition a second time, as these "conclusory remark[s]" are insufficient to constitute "argument."  *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653 n.7 (4th Cir. 2006).  Plaintiff does cite *Zak v. Chelsea Therapeutics Intern, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015), but that involved documents later determined <u>not</u> to have been incorporated.  In an unadopted recommendation, the magistrate in *Vaitkuviene v. Syneos Health, Inc.*, No. 5:18-CV-29-H-KS, 2020 WL 5742714, at *7 (E.D.N.C. Aug. 7, 2020), refused to consider documents not "vetted through the discovery process," even though this runs afoul of Supreme Court authority holding that courts "must consider," on motions to dismiss, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," *Tellabs*, 551 U.S. at 322.

**<u>CONCLUSION</u>**

The Complaint should be dismissed with prejudice.

Respectfully submitted this 16th day of April 2021.

WYRICK ROBBINS YATES & PONTON LLP

By:  /s/ Lee M. Whitman
Lee M. Whitman (N.C. Bar No. 20193)
Samuel A. Slater (N.C. Bar No. 43212)
lwhitman@wyrick.com
sslater@wyrick.com
4101 Lake Boone Trail, Suite 300
Raleigh, North Carolina 27607
Telephone: (919) 781-4000
Facsimile:  (919) 781-4865

15

**WILSON SONSINI GOODRICH & ROSATI, P.C.**

By:    /s/ Gregory L. Watts

Gregory L. Watts (WA Bar No. 43995)
John C. Roberts Jr. (WA Bar No. 44945)
Tyre L. Tindall (WA Bar No. 56357)
gwatts@wsgr.com
jroberts@wsgr.com
ttindall@wsgr.com
701 Fifth Avenue, Suite 5100
Seattle, Washington 98104
Telephone: (206) 883-2500
Facsimile:  (206) 883-2699

*Attorneys for Defendants Fennec
Pharmaceuticals Inc., Rostislav Raykov,
Robert Andrade, Chris A. Rallis, Marco
Brughera, Adrian J. Haigh, Khalid Islam,
and Jodi Cook*

16

## CERTIFICATE OF COMPLIANCE

Defendants, by and through the undersigned counsel, certify that this Reply in Support of Fennec Defendant's Motion to Dismiss complies with the word-count limit in LR 7.3(d)(1), as modified by this Court's February 23, 2021 order. The word count of the Memorandum is 3,999 words.

This 16th day of April 2021.

WILSON SONSINI GOODRICH & ROSATI, P.C.

/s/ Gregory L. Watts
Gregory L. Watts (WA Bar No. 43995)
gwatts@wsgr.com
701 Fifth Avenue, Suite 5100
Seattle, Washington 98104
Telephone: (206) 883-2500
Facsimile: (206) 883-2699

*Attorney for Defendants Fennec
Pharmaceuticals Inc., Rostislav Raykov,
Robert Andrade, Chris A. Rallis, Marco
Brughera, Adrian J. Haigh, Khalid Islam,
and Jodi Cook*

17

# CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this day a copy of the foregoing document was filed with the Court's CM/ECF system which served the same on all counsel of record.

This 16th day of April 2021.

/s/ Lee M. Whitman

18