## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JIM CHAPMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>     v.<br><br>FENNEC PHARMACEUTICALS INC., ROSTISLAV RAYKOV, ROBERT ANDRADE, CHRIS A. RALLIS, MARCO BRUGHERA, ADRIAN J. HAIGH, KHALID ISLAM, and JODI COOK,<br><br>          Defendants. | **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTION TO THE ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**<br><br>Case No. 1:20-cv-00812-LCB-JLW<br><br>Judge Loretta Copeland Biggs<br>Magistrate Judge Joe L. Webster |

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 5

    A.    The Magistrate Judge Correctly Held that the Complaint Failed to State a Claim With Respect to Statement 1 ............................................................. 5

        1.    Statement 1 Was Accompanied By Meaningful Cautionary Language ..................................................................................... 6

        2.    Plaintiff Does Not Plead Actual Knowledge of Falsity As to Statement 1 .................................................................................. 8

    B.    The Magistrate Judge Correctly Held that the Complaint Failed to State a Claim With Respect to Statement 8 ........................................................... 11

    C.    The Amended Complaint Should Be Dismissed With Prejudice................ 14

CONCLUSION ................................................................................................................. 19

i

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Acito v. IMCERA Grp., Inc.*,
47 F.3d 47 (2d Cir. 1995) ................................................................. 13

*Cozzarelli v. Inspire Pharm. Inc.*,
549 F.3d 618 (4th Cir. 2008) ............................................ 11, 12, 13, 16, 17

*Deasy v. Hill*,
833 F.2d 38 (4th Cir. 1987) ................................................................ 14

*Devil's Advoc., LLC v. Zurich Am. Ins. Co.*,
666 F. Appx 256 (4th Cir. 2013) ........................................................... 16

*Diamond v. Colonial Life & Acc. Ins. Co.*,
416 F.3d 310 (4th Cir. 2005) ................................................................ 4

*Foman v. Davis*,
371 U.S. 178 (1962) ........................................................................ 14

*Gaer v. Am. Pub. Educ., Inc.*,
895 F. Supp. 2d 763 (N.D.W. Va. 2011) .................................................... 16

*HCMF Corp. v. Allen*,
238 F.3d 273 (4th Cir. 2001) ............................................................... 16

*Hirtenstein v. Cempra, Inc.*,
348 F. Supp. 3d 530 (M.D.N.C. 2018),
*aff'd*, 816 F. App'x 747 (4th Cir. 2020) ................................................... 9

*In re 2U, Inc., Sec. Class Action*,
2021 WL 3418841 (D. Md. Aug. 5, 2021) ................................................... 10

*In re Cree, Inc. Sec. Litig.*,
2005 WL 1847004 (M.D.N.C. Aug. 2, 2005),
*aff'd sub nom. Teachers' Ret. Sys. of La. v. Hunter*,
477 F.3d 162 (4th Cir. 2007) ............................................................... 16

*In re Discovery Labs. Sec. Litig.*,
2006 WL 3227767 (E.D. Penn. Nov. 1, 2006) ............................................... 13

*In re Discovery Labs. Sec. Litig.*,
2007 WL 789432 (E.D. Pa. March 15, 2007),
*aff'd*, 276 F. App'x 154 (3d Cir. 2008) .................................................... 8

*In re Genzyme Corp. Sec. Litig.*,
754 F.3d 31 (1st Cir. 2014) ................................................................ 16

i

*In re iDreamSky Tech. Ltd. Sec. Litig.*,
236 F. Supp. 3d 824 (S.D.N.Y. 2017) ...................................................................... 10

*In re Immune Response Sec. Litig.*,
375 F. Supp. 2d 983 (S.D. Cal. 2005) ..................................................................... 10

*In re Lab'y Corp. of Am. Holdings Sec. Litig.*,
2006 WL 1367428 (M.D.N.C. May 18, 2006)....................................................... 7, 8

*In re Marriott, Int'l, Inc., Customer Data Sec. Breach Litig.*,
2021 WL 2407518 (D. Md. June 11, 2021),
*appeal filed*, No. 21-1802 (4th Cir. July 9, 2021) .................................................. 15

*In re PEC Sols., Inc.*,
418 F.3d 379 (4th Cir. 2005) ...................................................................... 10, 15, 16

*In re Triangle Capital Corp. Sec. Litig.*,
988 F.3d 743 (4th Cir. 2021)................................................................................... 16

*Inst. Inv'rs Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009) ...................................................................................... 8

*Iron Workers Loc. 16 Pension Fund v. Hilb Rogal & Hobbs Co.*,
432 F. Supp. 2d 571 (E.D. Va. 2006)....................................................................... 16

*Lormand v. US Unwired, Inc.*,
565 F.3d 228, 245 (5th Cir. 2009) ............................................................................. 7

*McLean v. United States*,
566 F.3d 391 (4th Cir. 2009),
*abrogated on other grounds by Lomax v. Ortiz-Marquez*,
140 S. Ct. 1721 (2020) ........................................................................................... 14

*Merck & Co. v. Reynolds*,
559 U.S. 633 (2010) .............................................................................................. 9, 13

*Nolte v. Capital One Fin. Corp.*,
390 F.3d 311 (4th Cir. 2004)................................................................................... 17

*Perkins v. United States*,
55 F.3d 910 (4th Cir. 1995)..................................................................................... 16

*Plymouth Cnty. Ret. Ass'n v. Primo Water Corp.*,
966 F. Supp. 2d 525 (M.D.N.C. 2013)...................................................................... 8

*Raab v. Gen. Physics Corp.*,
4 F.3d 286 (4th Cir. 1993)......................................................................................... 6

*Rollins v. Wackenhut Servs.*,
703 F.3d 122 (D.C. Cir. 2012) (Kavanaugh, J., concurring)................................... 14

ii

*Santa Fe Indus., Inc. v. Green*,
430 U.S. 462 (1977) ...................................................................................... 9

*Shah v. GenVec, Inc.*,
2013 WL 5348133 (D. Md. Sept. 20, 2013)..................................................... 16, 18

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
525 F.3d 370 (4th Cir. 2008) .................................................................... 17

*Vaitkuviene v. Syneos Health, Inc.*,
2021 WL 3856452 (E.D.N.C. Aug. 30, 2021) ....................................................... 15

*Yates v. Mun. Mortg. & Equity, LLC*,
744 F.3d 874 (4th Cir. 2014) ............................................................ 12

## STATUTES

Private Securities Litigation Reform Act of 1995,
15 U.S.C. § 78u–4 - Private securities litigation
("PSLRA") ........................................................ 3, 6, 10, 13, 16, 18, 19

Section 10(b) of the Securities Exchange Act,
15 U.S.C. § 78j(b)................................................................................. 2, 3, 9

Section 20(a) of the Securities Exchange Act,
15 U.S.C. § 78t(a)................................................................................... 2, 3

## RULES

FED. R. CIV. P. 12(b)(6)........................................................................... 14, 15

FED. R. CIV. P. 15(a)................................................................................. 5, 16

Defendants Fennec Pharmaceuticals Inc. ("Fennec" or "Company"), Rostislav Raykov, Robert Andrade, Chris A. Rallis, Marco Brughera, Adrian J. Haigh, Khalid Islam, and Jodi Cook ("Individual Defendants," and with Fennec, "Defendants"),[1] through undersigned counsel, respectfully submit this response to Plaintiff's Objection to Order and Recommendation of United States Magistrate Judge ("Objection" or "Obj."), ECF No. 55.

## INTRODUCTION

The Court should adopt the Magistrate Judge's thorough and well-reasoned thirty-three-page Order & Recommendation of U.S. Magistrate Judge ("Order and Recommendation" or "O&R"), ECF No. 48, recommending dismissal of Plaintiff's Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint" or "¶"), ECF No. 30, with prejudice. The dearth of Plaintiff's objections—to the dismissal of only two of the twenty misstatements alleged in the Complaint—and the weakness of those objections supports adoption of the O&R. The futility of Plaintiff's proposed amendment supports adoption of the O&R's recommendation for dismissal with prejudice.

Fennec is a pharmaceutical company that focuses on developing and commercializing PEDMARK™, a drug designed to prevent hearing loss in children undergoing chemotherapy. On August 11, 2020, Fennec issued a press release stating that

---

[1] Raykov is Fennec's CEO and Andrade its CFO. ¶¶18-19. Rallis, Brughera, Haigh, Islam, and Cook are members of its Board of Directors ("Board"), ¶¶20-24.

1

it had received a complete response letter ("CRL") from the U.S. Food and Drug Administration ("FDA") on August 10 regarding its new drug application ("NDA") for PEDMARK™. Fennec explained that a "recent . . . pre-approval inspection of the manufacturing facility of [its] drug product manufacturer" had "identified deficiencies resulting in a Form 483" that needed to be resolved prior to the approval of PEDMARK™. The CRL did not identify any clinical safety issues or request any further clinical data. Despite having never guaranteed investors that the FDA would grant the NDA, Fennec and the Individual Defendants were sued for securities fraud on September 4, 2020.

Plaintiff filed the operative Complaint on February 1, 2021, almost five months after the original complaint. ECF No. 30. The Complaint alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act for allegedly false and misleading statements. The Complaint acknowledges that the inspection of the third-party drug product manufacturer which led to the CRL was conducted on July 6-10, 2020. ¶104. Assuming a Form 483 was issued on the last day of that inspection (July 10), and given the fact that recipients of Form 483s are given 15 days to respond, ¶59, Fennec and its manufacturer would have had until July 25 to respond. The FDA's decision and CRL then issued on August 10, and Defendants disclosed it the very next day on August 11, 2020. ¶¶9, 100. Nothing about this timeframe suggests Defendants acted unreasonably.

Having no claim that Defendants failed to timely disclose the Form 483 and CRL, Plaintiff is forced to argue that Defendants could have foreseen the Form 483 and its impact on Fennec's NDA if they had conducted more "due diligence" on Fennec's third-party drug

2

substance and third-party drug product manufacturers. Indeed, Plaintiff goes so far to suggest that Defendants "should have known" or predicted as far back as December 20, 2018, nearly 20 months earlier, the ultimate results of the July 2020 inspection.

Defendants moved to dismiss the Complaint for failure to state a claim for violation of Sections 10(b) and 20(a). *See* 15 U.S.C. § 78j(b); 15 U.S.C. § 78t(a). On December 16, 2021, the Honorable Joe L. Webster recommended dismissal of the claims with prejudice for failure to plead with particularity the existence of a false or misleading statement or a strong inference of scienter. O&R at 14–32. Judge Webster conducted a thorough, statement-by-statement analysis of the Complaint,[2] ultimately holding, for each of the twenty challenged statements, that the Complaint either failed to allege with particularity that the statements were false and misleading, O&R at 19-27, failed to allege that the statements were not protected under the Private Securities Litigation Reform Act's ("PSLRA") Safe Harbor for forward-looking statements, O&R at 14-19, and/or failed to allege a strong inference of scienter, O&R at 27-31. *See* 15 U.S.C. § 78u–4. Judge Webster found that the few confidential witnesses ("CWs") alleged in the Complaint, none of whom were even Fennec employees, lacked any connection to the Individual Defendants and thus lacked any knowledge of their state of mind at the time the challenged statements were

---

[2] A Chart of Allegedly False and Misleading Statements, which lists the twenty challenged statements, was attached as an Appendix to Defendants' Memorandum of Law ISO Defendant's Motion to Dismiss, ECF No. 41, A-1 to A-3. The statements in the chart correspond with those used by Judge Webster in his Order. O&R at 14-27.

made, and that "the facts as a whole more plausibly suggest that Defendants' failure to more closely monitor the product manufacturer was innocent or negligent." O&R at 30.

Plaintiff's Objection all but completely capitulates to Defendants' motion to dismiss and the O&R. Plaintiff does not challenge the dismissal of eighteen of the twenty statements and has thereby waived any objection to the O&R as to those statements.[3] Plaintiff objects to the O&R only in respect of Statements 1 and 8. *See supra* fn. 2. Plaintiff suggests that *Statement 1* was not protected by the Safe Harbor because the cautionary language was not "meaningful" and because this is the rare case where Individual Defendants had "actual knowledge" of the falsity of their statements. But the cautionary language was more than sufficient, and Plaintiff does not come close to pleading "actual knowledge." In fact, the Complaint lacks any allegation as to what the Individual Defendants actually knew at any given point in time: it is all "could have known," "should have known," and "must have known" allegations. With respect to *Statement 8*, Plaintiff quibbles with the categorization of the statement, but it is supported by the statement's context, and the interpretation Plaintiff advances is inconsistent both with the statement's context and with the allegations of Plaintiff's own CWs. In short, the challenges to the O&R are meritless.

---

[3] The court is under "no obligation to conduct a de novo review" of the portion of the Order that is not specifically objected to: it need only "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315-16 (4th Cir. 2005) (citation omitted).

4

The Objection quickly morphs into a request for leave to amend, with Plaintiff invoking Rule 15(a) of the Federal Rules of Civil Procedure. Obj. at 7-10. What Plaintiff fails to mention is that futility of amendment is a well-recognized exception to the rule's liberal amendment policy. Here, Plaintiff is unable to articulate how his proposed amendments would cure the defects identified in the O&R and plead with particularity a material misstatement or a strong inference of scienter. Obj. at 10. Amending the Complaint to identify Fennec's drug product manufacturer as PII, as opposed to *either* PII *or* Bayer (as alleged in the Complaint), does not improve Plaintiff's falsity allegations at all. ¶¶102-10. Amending the Complaint to alleged that PII has had three drugs, unrelated to PEDMARK™, recalled since the end of the putative class period neither shows the falsity of Defendants' class period statements nor provides any information as to the Individual Defendants' state of mind during the class period. Similarly, amending the Complaint to include a November 30, 2021 disclosure, more than *fifteen months* after the end of the putative class period, that Fennec received a second CRL of a second PEDMARK™ NDA says nothing about the falsity of Defendants' class period statements or Defendants' state of mind at the time they made those statements. The Complaint should be dismissed with prejudice because Plaintiff's proposed amendments would be futile.

**ARGUMENT**

**A. The Magistrate Judge Correctly Held that the Complaint Failed to State a Claim With Respect to Statement 1**

Statement 1 was made on December 20, 2018, when Fennec stated in a press release that it was "targeting" the "second half of 2019" for the potential U.S. approval of

5

PEDMARK™. ¶111. As the Complaint alleges, Fennec ended up pushing back that target date to the "second half of 2020" on March 13, 2019, when the Company disclosed that a merger involving its third-party drug substance manufacturer had ultimately required a manufacturing site transition for PEDMARK™, which in turn caused a delay. ¶¶84-86. The Complaint suggests that Defendants should have predicted the necessity of a substance manufacturing site transition and revised its target sooner than it did. But Judge Webster correctly determined that the December 2018 statement about "targeting" the "second half of 2019" was protected by the PSLRA Safe Harbor for forward-looking statements. O&R at 14-19. Even if not protected by the Safe Harbor (it is), Judge Webster noted that "the Fourth Circuit has held that 'projections of future performance not worded as guarantees are generally not actionable.'" O&R at 16 (quoting *Raab v. Gen. Physics Corp.*, 4 F.3d 286, 290 (4th Cir. 1993)).

The Objection challenges the O&R, recycling Plaintiff's arguments in opposition to Defendants' motion to dismiss that (1) the cautionary language accompanying the forward-looking statement was not meaningful; and (2) this is the rare case in which executives could have had "actual knowledge" of the falsity of their statements. Obj. at 4-6. No matter how many times Plaintiff repeats them, these arguments remain unpersuasive.

**1.      Statement 1 Was Accompanied By Meaningful Cautionary Language**

Plaintiff characterizes Fennec's cautionary language as "boilerplate," Obj. at 1-2, 5, claiming that it was not "specific enough to be meaningful" because it failed to warn investors that the Company was at risk of not getting its NDA-related manufacturing data

6

together on time. Obj. at 5. However, boilerplate cautionary language is something like "'[t]his is a forward-looking statement: caveat emptor,'" *In re Lab'y Corp. of Am. Holdings Sec. Litig.*, 2006 WL 1367428, at *5 (M.D.N.C. May 18, 2006) (citation omitted), or "[t]hese forward-looking statements involve numerous risks, uncertainties and assumptions, and actual results could differ materially from anticipated results," *Lormand v. US Unwired*, *Inc.*, 565 F.3d 228, 245 (5th Cir. 2009) (citation omitted). Here, Fennec's disclosures went well beyond such generalities. Indeed, Plaintiff addresses just a single cautionary statement, "that 'scientific data may not be sufficient to meet regulatory standards,'" Obj. at 5, but ignores all others, including that Fennec might not obtain the "required regulatory clearances or approvals," Ex. 10[4] (12/20/18 PR) at 2-3, that "[r]egulatory approval . . . is time-consuming, expensive and uncertain" and could cause Fennec to incur "unexpected[] . . . delay," Ex. 6 (FY2017 10-K) at 8-10, that third-party "manufacturing facilities must be approved by the FDA before they can be used to manufacture our product," and that a failure "to meet required manufacturing standards [] could result in delays[.]" *Id*. at 10, 12.

---

[4] References to "Ex. 6" and "Ex. 10" refer to the exhibits submitted with the Declaration of John C. Roberts Jr. in Support of Defendants' Motion to Dismiss Consolidated Amended Complaint. ECF No. 42. Exhibit 10 is the December 20, 2018 press release containing Statement 1, and Exhibit 6 is certain cautionary language from the Company's FY2017 Form 10-K which was incorporated by reference into the press release. Judge Webster took judicial notice of both documents at the pleading stage, as explained in the Order. O&R at 9, 10.

Regardless, the Safe Harbor does not require a company to articulate the precise risk that comes to pass, as "this Court has previously held that even 'standard' cautionary language satisfies the Safe Harbor requirements when it puts potential investors on notice of 'significant risks similar to that actually realized.'" O&R at 18 (quoting *Lab'y Corp.*, 2006 WL 1367428, at *4-5). The cautionary language here does exactly that, particularly given the repeated references to possible delays related to compliance manufacturing standards and the FDA's approval of manufacturing facilities. Ex. 6 (FY2017 10-K) at 8-10, 12; Ex. 10 (12/20/18 PR) at 2-3. Far less specific language has been found to be meaningful. *See Plymouth Cnty. Ret. Ass'n v. Primo Water Corp.*, 966 F. Supp. 2d 525, 550 (M.D.N.C. 2013); *Lab'y Corp.*, 2006 WL 1367428, at *4.

### 2. Plaintiff Does Not Plead Actual Knowledge of Falsity As to Statement 1

Plaintiff claims that Judge Webster erred because the Complaint alleged Defendants had "actual knowledge" that Statement 1 was false or misleading. Obj. at 4. Actual knowledge is a standard even higher than the near-intentional recklessness required to show scienter for non-forward-looking statements. *See Inst. Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 274 (3d Cir. 2009) (scienter requirement for forward-looking statements "stricter than that for statements of current fact"); *In re Discovery Labs. Sec. Litig.*, 2007 WL 789432, at *6 (E.D. Pa. March 15, 2007) (plaintiff must allege defendants "did not actually believe . . . FDA inspection would be successful"), *aff'd*, 276 F. App'x 154 (3d Cir. 2008). Here, Plaintiff cannot satisfy this requirement because the Complaint alleges absolutely nothing as to what any of the Individual Defendants actually knew about the third-party

8

drug substance manufacturer's merger or its impact on Fennec's PEDMARK™ NDA. ¶¶1-179.

*First*, Plaintiff claims that Defendants "***should have known***" that their drug substance manufacturer was not capable of "large-scale" commercial manufacturing, Obj. at 4 (emphasis added); ¶5, "***should have known***" that a merger involving its drug substance manufacturer would prevent the Company from generating the manufacturing data it needed, Obj. at 4 (emphasis added); "***should have known*** . . . a 'site transition . . . was required,'" ¶¶5, 83, 85 (emphasis added), and should have known that the Company's then-current schedule was "***unfeasible***" and "***did not have a reasonable basis***." ¶¶2, 5, 78, 84 (emphasis added). But such "should have known" allegations are not allegations of actual knowledge. They are not even allegations of scienter. They are allegations of negligence, mismanagement, or mistake. *See Merck & Co. v. Reynolds*, 559 U.S. 633, 649 (2010) (heightened standards not satisfied where inference is defendant acted "innocently or negligently"); *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 479-80 (1977) (Section 10(b) was not intended to reach and does not reach "internal corporate mismanagement"); *Hirtenstein v. Cempra, Inc.*, 348 F. Supp. 3d 530, 562 (M.D.N.C. 2018) (more plausible inference was defendants acted "innocently or negligently"), *aff'd*, 816 F. App'x 747 (4th Cir. 2020).

*Second*, Plaintiff's allegation of actual knowledge relies upon a daisy chain of wholly *unsupported* inferences. Assuming Defendants were aware in December 2018 of Fennec's third-party drug substance manufacturer's pending merger with another drug

9

manufacturer, it does not mean that Defendants were also aware of how the post-merger company would integrate its combined manufacturing facilities before the merger even closed in January 2019. ¶84. Assuming Defendants knew in December 2018 this third-party manufacturing partner's post-merger plans for integrating its combined facilities before the merger even closed, it does not mean that Defendants were also aware that these plans would require moving the substance manufacturing for PEDMARK™ to another facility, that the move would require new six-month stability data for PEDMARK™ at the new facility, or that obtaining this six-month stability data would necessarily delay the PEDMARK™ NDA projected for some time in the second half of 2019.[5] The Court should adopt the O&R's recommendation and dismiss Statement 1.[6]

---

[5] Plaintiff's cited cases, Obj. at 5-6, demonstrate exactly what the Complaint lacks. Plaintiff cites *In re 2U, Inc., Sec. Class Action*, 2021 WL 3418841, at *22 (D. Md. Aug. 5, 2021), but that case concerned allegations of problems internal to the defendant company, not problems with a third party, like here. And the *2U* complaint included at least sixteen former employees as confidential witnesses including those who interacted directly with the defendant executives and attested to their knowledge, *see* 2021 WL 3418841, at *2-22, precisely the type of allegations missing here. *In re iDreamSky Tech. Ltd. Sec. Litig.*, 236 F. Supp. 3d 824, 833 (S.D.N.Y. 2017) similarly involved allegations of actual knowledge of problems within a company, not actual knowledge of the intentions and plans of third parties outside the company's control. Finally, in *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1019 (S.D. Cal. 2005), the plaintiffs alleged the details of internal reports and other sources that showed the statements made were false when made—again, precisely what is lacking here.

[6] Although the Magistrate Judge did not reach the falsity of Statement 1 given the determination that the PSLRA Safe Harbor applied, O&R at 19 n.8, lack of falsity could be an alternate ground for dismissal. The Complaint does not allege with particularity how the December 2018 statement that Fennec was "targeting" the end of 2019 for potential FDA approval was false or misleading when made. The Complaint does not allege that Fennec had a different internal schedule or target date, nor does it allege what kind of arrangements that Fennec had in place with the FDA. ¶¶1-179. *See In re PEC Sols., Inc.*,

10

**B.    The Magistrate Judge Correctly Held that the Complaint Failed to State a Claim With Respect to Statement 8**

With Statement 8, Plaintiff challenges an August 9, 2019 press release in which the Company stated that it had "successfully manufactured PEDMARK™." ¶122. Judge Webster correctly dismissed the challenge to Statement 8 because Plaintiff failed to allege both falsity and scienter with particularity. O&R at 23-24, 27-31. Plaintiff argues that Statement 8 must have been about Fennec's third-party drug *product* manufacturer, and not its third-party drug *substance* manufacturer, because the statement "does not mention the word 'substance.'" Obj. at 2, 6-7. This argument fails for four reasons.

*First*, Plaintiff's argument, of course, ignores that the statement does not mention the word "product" either. Ex. 11.

*Second*, Judge Webster correctly read the statement in context, as required by the federal securities laws. *See Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 625 (4th Cir. 2008) (court may look beyond Plaintiff's mischaracterizations of statements and examine them in their "necessary context"). As the Complaint concedes, at the time of the challenged statement in August 2019, Fennec had previously only discussed its drug *substance* manufacturer with the public. ¶¶113, 120. In March 2019, Fennec discussed the merger involving its "drug *substance* manufacturer" and the transition to the "new facility," ¶113 (emphasis added), and in May 2019, it spoke about the "production

---

418 F.3d 379, 388–89 (4th Cir. 2005) (rejecting falsity allegations that were "vague and conclusory"). Moreover, as shown above regarding actual knowledge, Plaintiff fails to plead a strong inference of scienter as to the impact of its third-party drug substance manufacturer on its NDA timetable.

11

transition of PEDMARK™'s API to the new commercial drug *substance* manufacturing site." ¶120 (emphasis added). Following on the heels of those two statements, it is logical to interpret Statement 8 as updating investors on the status of PEDMARK™'s drug substance manufacturing. Judge Webster rightly related the Company's August 2019 statement back to its March and May 2019 statements. O&R at 24. Indeed, Fennec had *never* discussed its drug *product* manufacturer publicly before. ¶102. In suggesting that Statement 8 referenced the Company's drug *product* manufacturer, Plaintiff ignores the obvious, continuing connection to Fennec's prior disclosures about its drug *substance* manufacturer. This makes no sense. *See Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 885 (4th Cir. 2014) (stating that allegations are afforded "the inferential weight warranted by context and common sense"); *Cozzarelli*, 549 F.3d at 625–26 (rejecting plaintiff's unreasonable reading of document).

*Third*, Plaintiff claims that Statement 8 wrongly implied that "the Company had been able to complete the entire manufacturing process . . . for some units of PEDMARK." Obj. at 6 (emphasis removed). Assuming so, this could not be false, as Plaintiff's own CWs allege that the "problem" with the old manufacturing site was not that it could not manufacture PEDMARK™, but that it could not do so at sufficient "scale." ¶¶5, 83.

*Finally*, even if one indulged Plaintiff with respect to Statement 8 and conceded that it was a reference to the Company's drug *product* manufacturer or *product* manufacturing capability (it was not), there would still be nothing to disclose because the problematic inspection at the drug *product* manufacturer did not occur until July 2020, ¶104, almost a

year later.  Moreover, even if Plaintiff could manage to plead falsity with the particularity required by the federal securities laws (he does not), he still cannot allege scienter with respect to Statement 8.  Again, Plaintiff alleges that Fennec failed to "conduct[] ***due diligence and/or a deep-dive quality audit*** of the drug product manufacturing facility[.]" ¶97 (emphasis added); *see also* ¶¶ 89, 93, 98, 101, 114, 117, 119, 121, 123, 127, 129, 132, 134, 136, 138, 140 (alleging failure to conduct adequate "***due diligence***") (emphasis added).  These allegations sound in negligence or corporate mismanagement, and under *Green*, *Reynolds*, and their progeny, they are insufficient to allege a strong inference of scienter required under the federal securities laws.[7]  In fact, in *In re Discovery Labs. Sec. Litig.*, 2006 WL 3227767, at *9 (E.D. Penn. Nov. 1, 2006), a case with striking resemblance to this one, the court found allegations that defendants "had a duty to engage in due diligence," which would have allegedly uncovered prior Form 483s issued to the company's third-party drug manufacturer, insufficient to plead securities fraud.  *Id*. at *9; *see also Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995) (prior inspection issues did not equate to "foregone conclusion" of future inspection failure).  So here.

---

[7] The Objection suggests a general corporate motive for fraud—namely, that executives needed to "keep up the façade" in order to raise money for the venture.  Obj. at 5.  Such generic corporate motives do not plead a strong inference of scienter.  *See Cozzarelli*, 549 F.3d at 627 ("All investments carry risk, particularly in a field like biopharmaceuticals.  If we inferred scienter from every bullish statement by a pharmaceutical company that was trying to raise funds, we would choke off the lifeblood of innovation in medicine by fueling frivolous litigation — exactly what Congress sought to avoid by enacting the PSLRA.").  Moreover, the alleged motive here is not at all particularized: the Complaint makes passing reference to the existence of a senior debt facility, ¶87, but it does not allege the terms of that facility, let alone if it was dependent on Fennec's stock price.

### C. The Amended Complaint Should Be Dismissed With Prejudice

Sensing that the Complaint will not survival dismissal, Plaintiff's Objection shifts its focus to requesting leave to amend. *See, e.g.*, Obj. at 3 ("[D]ismissal should not be with prejudice[.]"); *id*. at 10 ("Plaintiff . . . requests that any dismissal be without prejudice and with leave to file an amended complaint [.]"). The O&R should be adopted and the Complaint dismissed with prejudice because Plaintiff's proposed amendments would not cure the Complaint's deficiencies.

Judge Webster issued the O&R dismissing Plaintiff's Complaint. Plaintiff filed a motion to clarify whether the O&R was for dismissal with prejudice, ECF No. 51. But as Judge Webster stated, a Rule 12(b)(6) dismissal ordinarily operates as a dismissal with prejudice unless the court states otherwise. *See* Text Order, ECF No. 54.2; *McLean v. United States*, 566 F.3d 391, 396 (4th Cir. 2009), *abrogated on other grounds by Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1725 (2020) ("[w]hen a court dismisses a case for failure to state a claim but neglects to specify whether the order is with or without prejudice," the presumption is that courts "treat the dismissal 'as an adjudication on the merits' meaning a dismissal with prejudice'"); *Rollins v. Wackenhut Servs*., 703 F.3d 122, 132–33 (D.C. Cir. 2012) (Kavanaugh, J., concurring) (". . . Rule 12(b)(6) dismissal ordinarily operates as a dismissal with prejudice, unless the district court in its discretion states otherwise.").

Plaintiff suggests dismissal with prejudice here would be "improper." Obj. at 7. But leave to amend lies "within the sound discretion of the district court," *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)), as his

14

own case law acknowledges. *See In re Marriott, Int'l, Inc., Customer Data Sec. Breach Litig.*, 2021 WL 2407518, at \*45 (D. Md. June 11, 2021) ("'The determination whether to dismiss with or without prejudice under Rule 12(b)(6) is within the discretion of the district court.'"), *appeal filed*, No. 21-1802 (4th Cir. July 26, 2021).

Plaintiff argues that there is an unwritten "rule" that requires granting leave to amend once, Obj. at 9, but this so-called rule is not apparent from *Vaitkuviene v. Syneos Health, Inc.*, 2021 WL 3856452, at \*16 (E.D.N.C. Aug. 30, 2021), the authority Plaintiff cites for this proposition. Even assuming such a rule exists, Plaintiff has *already filed* an amended complaint. The original complaint was filed on September 3, 2020, ECF No. 1. After being appointed lead plaintiff, Plaintiff filed his amended complaint, the Complaint, on February 1, 2021, ECF. No. 30. Plaintiff himself titled it an "[a]mended" pleading. *Id*. Contrary to Plaintiff's argument, what has been found to be an "abuse of discretion" is to deny a motion for leave to amend without the basis for the denial being apparent. *See PEC Sols.*, 418 F.3d at 391 ("As long as a district court's reasons for denying leave to amend are apparent, its failure to articulate those reasons does not amount to an abuse of discretion.") (citation omitted).

Retreating from his argument of an unwritten rule requiring that the Court grant his request for leave to amend, Plaintiff argues that leave to amend is supported here by so called "trend[s]" in out-of-Circuit cases and the fact that courts "regularly" grant such motions. Obj. at 7-8. But there are nearly as many cases in which leave to amend is not granted, including cases in which dismissal with prejudice was deemed appropriate without

15

a second post-consolidation complaint being filed. *See, e.g.*, *In re Triangle Capital Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021) (affirming dismissal of first amended complaint with prejudice); *Cozzarelli*, 549 F.3d at 630 (same); *PEC Sols.*, 418 F.3d at 391 (same); *In re Cree, Inc. Sec. Litig.*, 2005 WL 1847004, at *15 (M.D.N.C. Aug. 2, 2005) (dismissing first amended complaint with prejudice), *aff'd sub nom. Teachers' Ret. Sys. of La. v. Hunter*, 477 F.3d 162 (4th Cir. 2007); *Shah v. GenVec, Inc.*, 2013 WL 5348133, at *15 (D. Md. Sept. 20, 2013) (same); *Gaer v. Am. Pub. Educ., Inc.*, 895 F. Supp. 2d 763, 793 (N.D.W. Va. 2011) (same); *Iron Workers Loc. 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 595 (E.D. Va. 2006) (same). As shown below, whether leave to amend is granted in any given case hinges on the proposed amendments and their ability to rectify the deficiencies identified in the pleading.

Plaintiff invokes the "[g]enerally" liberal policy toward amendment under Rule 15(a), Obj. at 7, but ignores that one of the recognized and often used exceptions to liberally granting leave to amend is when the proposed amendment would be futile,[8] *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001) (citation omitted), as where the proposed amended complaint would "still fail to survive a motion to dismiss," *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995), fail to "satisfy the requirements of the federal

---

[8] Once again, this is acknowledged by Plaintiff's own case law. Obj. at 7; *Devil's Advoc., LLC v. Zurich Am. Ins. Co.*, 666 F. Appx 256, 267 (4th Cir. 2013) (recognizing futility as an exception to liberally granting leave to amend). In *In re Genzyme Corp. Sec. Litig.*, 754 F.3d 31, 47 (1st Cir. 2014), Obj. at 7, the First Circuit merely stated that the PSLRA did not *require* dismissal with prejudice. That finding is of no help to Plaintiff here.

rules," *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008), or where there are "fundamental deficiencies in plaintiffs' theory of liability," *Cozzarelli*, 549 F.3d at 630.

Here, Plaintiff identifies three proposed amendments: (1) the name of Fennec's third-party drug product manufacturer, (2) the fact that this third-party drug product manufacturer has had three drugs, unrelated to PEDMARK™, recalled since the end of the putative class period, and (3) that on November 30, 2021, more than *fifteen months* after the end of the putative class period, that Fennec received a second CRL related to a second PEDMARK™ NDA. These proposed amendments would be futile because they do not correct the Complaint's deficiencies identified in the O&R.

*First*, Plaintiff's proposed amendment to "confirm[]" the name of Fennec's "problematic product manufacturer" as PII, Obj. at 3, 10, would be futile because it does not cure the deficiencies the Complaint. The Complaint *already* alleges that the Company's third-party drug product manufacturer was *either* PII *or* Bayer. ¶¶102-10. Judge Webster assumed that either PII or Bayer was Fennec's drug product manufacturer when he found that Statement 8 triggered no duty to disclose, O&R at 22–23, because "[e]ven if Fennec had known about issues with Fennec's *product* manufacturer, Fennec's positive statements about its *substance* manufacturer d[id] not require Fennec to disclose bad facts about Fennec's *product* manufacturer." O&R at 24 (emphasis added). The proposed amendment does nothing to change this, nor could it. *See Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 317 (4th Cir. 2004) (futility exists where "proposed amendment

17

would not have cured the deficiencies of the complaint"); *Shah*, 2013 WL 5348133, at *15 ("Plaintiffs have not suggested how a second amended complaint would address the infirmities of the first amended pleading, nor does it appear that they could.").

*Second*, Plaintiff's proposed amendment to add that "PII [has] had three drug recalls since its prior FDA inspection" in July 2020 related to the PEDMARK™ manufacturing facility, Obj. at 3, 10, would be futile because it does not cure the deficiencies of the Complaint. Plaintiff does not argue that these recalls relate in any way to PEDMARK™, that Defendants were aware of them, or that these recalls even occurred during the putative class period. In fact, if they took place after the July 2020 inspection, as Plaintiff argues, they almost certainly occurred after the putative class period ending on August 11, 2020. Accordingly, they neither show the falsity of Defendants' class period statement nor provides any information as to the Individual Defendants' state of mind during the class period. Even if these allegations were added to a second amended complaint, it would not plead a strong inference of scienter, as required by the PSLRA. O&R at 27–31.

*Third*, Plaintiff's proposed amendment to include a November 30, 2021 disclosure, more than *fifteen months* after the end of the putative class period, that Fennec received a second CRL of a second PEDMARK™ NDA, Obj. at 10, says nothing about the falsity of Defendants' class period statements or Defendants' state of mind at the time they made those statements. Statements made from December 2018 August 2020 are not rendered false or misleading by the receipt of a CRL in November 2021, let alone one that involved a separate NDA. O&R. at 23–24. And a November 2021 CRL adds nothing to what

Defendants knew during a putative class period ending more than *fifteen months* earlier. Again, even if these allegations were added to a second amended complaint, it would not plead a strong inference of scienter, as required by the PSLRA. *Id.* at 27–31.

## CONCLUSION

Defendants request that the Court adopt the Order and Recommendation of the Magistrate Judge and dismiss the Complaint with prejudice on the ground that amendment would be futile.

Respectfully submitted this 3rd day of February 2022.

**WYRICK ROBBINS YATES & PONTON LLP**

By: /s/ Lee M. Whitman
Lee M. Whitman (N.C. Bar No. 20193)
Samuel A. Slater (N.C. Bar No. 43212)
lwhitman@wyrick.com
sslater@wyrick.com
4101 Lake Boone Trail, Suite 300
Raleigh, North Carolina 27607
Telephone: (919) 781-4000
Facsimile: (919) 781-4865

19

**WILSON SONSINI GOODRICH & ROSATI, P.C.**

By:     /s/ Gregory L. Watts
        Gregory L. Watts (WA Bar No. 43995)
        John C. Roberts Jr. (WA Bar No. 44945)
        Tyre L. Tindall (WA Bar No. 56357)
        gwatts@wsgr.com
        jroberts@wsgr.com
        ttindall@wsgr.com
        701 Fifth Avenue, Suite 5100
        Seattle, Washington 98104
        Telephone: (206) 883-2500
        Facsimile:  (206) 883-2699

*Attorneys for Defendants Fennec Pharmaceuticals Inc., Rostislav Raykov, Robert Andrade, Chris A. Rallis, Marco Brughera, Adrian J. Haigh, Khalid Islam, and Jodi Cook*

20

**CERTIFICATE OF COMPLIANCE**

Defendants, by and through the undersigned counsel, certify that this Response to Plaintiff's Objections to Order and Recommendation of United States Magistrate Judge complies with the word-count limit in LR 72.4.  The word count of the Response is 5,267 words.

This 3rd day of February 2022.

**WILSON SONSINI GOODRICH & ROSATI, P.C.**

/s/ Gregory L. Watts
Gregory L. Watts (WA Bar No. 43995)
gwatts@wsgr.com
701 Fifth Avenue, Suite 5100
Seattle, Washington 98104
Telephone:  (206) 883-2500
Facsimile:   (206) 883-2699

*Attorney for Defendants Fennec*
*Pharmaceuticals Inc., Rostislav Raykov,*
*Robert Andrade, Chris A. Rallis, Marco*
*Brughera, Adrian J. Haigh, Khalid Islam,*
*and Jodi Cook*

21

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this day a copy of the foregoing document was filed with the Court's CM/ECF system which served the same on all counsel of record.

This 3rd day of February 2022.

<u>/s/ Lee M. Whitman</u>