| | |
|---|---|
| JIM CHAPMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FENNEC PHARMACEUTICALS INC., ROSTISLAV RAYKOV, ROBERT ANDRADE, CHRIS A. RALLIS, MARCO BRUGHERA, ADRIAN J. HAIGH, KHALID ISLAM, and JODI COOK,<br><br>Defendants. | **LEAD PLAINTIFF DANIEL MALAKOTI'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR POST JUDGMENT RELIEF TO AMEND THE CONSOLIDATED AMENDED COMPLAINT**<br><br>Case No. 1:20-cv-00812-UA-JLW<br><br>Judge Loretta Copeland Biggs<br>Magistrate Judge Joe L. Webster |

Lead Plaintiff Daniel Malakoti ("Plaintiff") submits this Memorandum of Law in Support of his Motion for an Order, pursuant to Federal Rule of Civil Procedure ("Rule") 59(e) or 60(b), vacating the Court's March 2, 2022 Order (ECF No. 57) ("Order") dismissing the above-captioned Action with prejudice, and Rule 15(a)(2), granting his post-judgment request for leave to amend the Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint") (ECF No. 30).[1]

## PRELIMINARY STATEMENT

Fennec, a biopharmaceutical company, has been primarily focused on developing PEDMARK—a sodium thiosulfate anhydrous injection, for the prevention of platinum-induced ototoxicity in pediatric cancer patients. Beginning in March 2018, Fennec began working closely with the FDA on its rolling submission of the PEDMARK NDA after

---

[1] Unless otherwise noted, capitalized terms have the meanings ascribed in the Complaint; all emphasis is added; and internal citations are omitted.

being granted Breakthrough Therapy and Fast Track designations. From the time Fennec initiated its rolling NDA on December 20, 2018 through the rest of the Class Period, Defendants concealed from investors the identity of the Company's third-party commercial manufacturers and the high risks of delay associated with those specific manufacturers. Defendants were well aware of and recklessly disregarded that risk.

Because Defendants concealed that information, investors were shocked when, before the markets opened on August 11, 2020, Fennec disclosed that it had received a Complete Response Letter ("CRL") from the FDA regarding its PEDMARK NDA. According to the CRL, after inspecting the facility of the Company's unidentified drug product manufacturer, "the FDA identified deficiencies resulting in a Form 483, which is a list of conditions or practices that are required to be resolved prior to the approval of PEDMARK$^{TM}$." On this news, Fennec's stock price fell $3.51, or 34%, to close at $6.66 per share on August 11, 2020.

Accordingly, on September 3, 2020, plaintiff Jim Chapman filed a class action complaint asserting claims under §§ 10(b) and 20 of the Securities Exchange Act of 1934 and SEC Rule 10b-5, against Fennec, its CEO, Defendant Raykov, and CFO, Defendant Andrade. ECF No. 1.

Pursuant to the PSLRA, Plaintiff timely moved for appointment as Lead Plaintiff and approval of his selection of counsel on November 2, 2020, and was appointed the same on December 3, 2020. *See* ECF Nos. 17, 25. Plaintiff proceeded to conduct an investigation and filed the operative Complaint on February 1, 2021. ECF No. 30.

In addition to the allegations laid out in the initial complaint filed on September 3,

2

2020, the Complaint, *inter alia*, identified red flags associated with Fennec's drug product manufacturer – which were known to Defendants but not to investors. Through his thorough investigation, Plaintiff:

- discovered that the undisclosed drug product manufacturer was either PII or Bayer;

- identified a prior corrective disclosure on March 13, 2019 involving a manufacturing site change that Defendants had been aware since November 20, 2018 (if not earlier);

- identified Fennec's drug substance manufacturer – Avista – which was the subject of the aforementioned site change and resulting 6-month delay due to the additional time needed to obtain the FDA-required stability data from the new site;

- added false and/or misleading statements involving Defendants' duty to disclose the specific manufacturing risks known by Defendants; and

- added members of Fennec's Board of Directors as defendants (Rallis, Brughera, Haigh, Islam and Cook).

On March 3, 2021, Defendants moved to dismiss the Complaint, and Plaintiff opposed on April 2, 2021. *See* ECF Nos. 40 ("MTD"), 45 ("Opposition"). In his Opposition, Plaintiff requested leave to amend based on Fennec's recognition, on March 30, 2021, that specific risks identified in the Complaint had materialized. *See* ECF No. 45 at n. 11.

On December 16, 2021, the Honorable United States Magistrate Judge Joe L. Webster issued an order recommending that the MTD be granted. ECF No. 48 ("Recommendation"). The Recommendation was based on Judge Webster's findings that, *inter alia*, certain alleged misstatements were protected by the PSLRA's Safe Harbor, other alleged misstatements were not false or did not contain substantive enough information to

3

trigger a duty to disclose, and the allegations did not give rise to a strong inference of scienter. *See id.*

The Recommendation, however, did not acknowledge Plaintiff's request for leave to amend, nor did it provide whether dismissal should be with or without prejudice. *See id.* Accordingly, on December 22, 2021, Plaintiff requested clarification as to the Recommendation. ECF No. 50 ("Clarification Motion"). On January 14, 2022, Judge Webster denied the Clarification Motion, providing that, "[c]ourts have held that, unless otherwise specified, a dismissal for failure to state a claim under Rule 12(b)(6) is presumed to be both a judgment on the merits and rendered *with prejudice*." *See Chapman v. Fennec Pharms., Inc. et al.*, No. 2:20-cv-00812-LCB-JLW, Text Order (Jan. 14, 2022) (emphasis in original) (quoting *McLean v. U.S.*, 556 F.3d 391, 396 (4th Cir. 2009), *abrogated on other grounds by Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1725 (2020)).

On January 24, 2022, Plaintiff filed an Objection to the Recommendation, asserting, in relevant part, that dismissal with prejudice would be improper given the new evidence discovered since the Complaint was filed. *See* ECF No. 55 ("Objection") at 7-10. After Defendants responded to the Objection on February 3, 2022, this Court granted the MTD and dismissed the Action with prejudice on March 2, 2022. *See* ECF Nos. 56-57.

Plaintiff's proposed Second Amended Complaint ("SAC"), filed concurrently with this Motion, sets forth allegations that address the shortcomings identified by Judge Webster and adopted by the Court. *See* Declaration of Ivy T. Ngo ("Ngo Decl."), Exhibits A-B (a redline version of the SAC as compared to the Complaint, and a copy of the filing-ready SAC). As the SAC clearly demonstrates, Defendants made substantive and

materially misleading statements regarding Fennec's Research and Development ("R&D") expenses and manufacturing. Moreover, Defendants made such statements with the requisite scienter. Defendants chose and, therefore, were aware of the allocation of Fennec's funds. Instead of spending sufficient funds to ensure that the manufacturer's facility met the cGMP standards required by the FDA, the Company allocated over 17% of the Company's funds on compensation for Defendant Andrade and Raykov.

As such, as detailed below, the SAC sufficiently alleges all necessary elements of a securities fraud action, therefore, eliminating any claims of futility. Further, Plaintiff's request for leave to amend is not made in bad faith and is not prejudicial to Defendants. Plaintiff, therefore, requests that this Court grant leave to amend.

## ARGUMENT

## I.      LIBERAL STANDARD FOR LEAVE TO AMEND IN SECURITIES CASES

Despite the dismissal with prejudice, the Court retains authority to grant Plaintiff leave to amend the Complaint. *See Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (A "court may not deny such a motion simply because it has entered judgment against the plaintiff—be it a judgment of dismissal, a summary judgment, or a judgment after a trial on the merits."). Procedurally, a "court may not grant a post-judgment motion to amend a complaint unless the court first vacates its judgment pursuant to [Rule] 59(e) or 60(b)." *Bond v. U.S.*, 742 F. App'x 735, 736 (4th Cir. 2018). "To determine whether vacatur is warranted, however, the court need not concern itself with either of those rules' legal standards." *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011). Instead, the Court "need only ask whether the amendment should be granted, just as it would on a

prejudgment motion to amend pursuant to [Rule] 15(a)." *Id*. Thus, a post-judgment request for leave to amend is evaluated "under the same legal standard as a similar motion filed before judgment was entered—for prejudice, bad faith, or futility." *Id.* (quoting *Laber*, 438 F.3d at 427); *see e.g., Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019), *as amended* (Jan. 9, 2019) (A motion to amend may be denied "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile."); *Singer v. TranS1, Inc.*, No. 7:12-CV-23-F, 2014 WL 12748534, at *4 (E.D.N.C. May 5, 2014) (same); *Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009) ("[T]hat the district court abused its discretion in denying a motion to amend…is sufficient grounds on which to reverse [it]'s denial of a Rule 59(e) motion."); *U.S. v. Shabazz*, 509 F. App'x 265, 266-67 (4th Cir. 2013) (vacating and remanding denial of Rule 15 motion as abuse of discretion because "[t]he only reason the district court gave" was that the plaintiff "could not establish that he was entitled to have [it]s final judgment vacated under Rule 60(b). [It] did not consider whether [the] amended complaint would be prejudicial, futile, or was made in bad faith.").

Rule 15 allows a party to amend its pleadings once as a matter of course and then "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)-(2). "The court should freely give leave when justice so requires." *Id.* This Circuit has viewed Rule 15's directive to grant leave freely as a "mandate to be heeded." *Devil's Advoc., LLC v. Zurich Am. Ins. Co.*, 666 F. App'x 256, 267 (4th Cir. 2016); *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010) ("It is this Circuit's policy to liberally allow amendment in keeping with the spirit of [Rule] 15(a)."). "This liberal rule gives effect to

6

the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber*, 438 F.3d at 427; *see e.g.*, *Minter v. Prime Equip. Co*., 451 F.3d 1196, 1204 (10th Cir. 2006) ("The purpose of the Rule is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."); *Ariz. Civ. Constructors, Inc. v. Colony Ins. Co*., 481 F. Supp. 3d 1141, 1152 (D. Nev. 2020) (same); *see also Mayeaux v. La. Health Serv. & Indem. Co*., 376 F.3d 420, 425 (5th Cir. 2004) ("[Rule] 15(a) evinces a bias in favor of granting leave to amend. As a result, absent a substantial reason … courts must entertain a presumption in favor of granting parties leave to amend.").

In the context of securities fraud cases, "[l]eave to amend is to be granted with extreme liberality…because the heightened pleading requirements imposed by the PSLRA are so difficult to meet." *Osher v. JNI Corp*., 183 F. App'x 604, 605 (9th Cir. 2006); *Welgus v. TriNet Grp., Inc*., No. 15-cv-03625-BLF, 2017 WL 6466264, at *31 (N.D. Cal. Dec. 18, 2017), *aff'd*, 765 F. App'x 239 (9th Cir. 2019) (quoting *Osher* with favor). "[T]hat the claimants have had multiple attempts to comply with PSLRA pleading requirements is insufficient reason to dismiss a complaint with prejudice." *Payne v. DeLuca*, No. 2:02-CV-1927, 2006 WL 3590014, at *10 (W.D. Pa. Dec. 11, 2006); *see e.g*., *Worldcom, Inc. v. Graphnet, Inc*., 343 F.3d 651, 657 (3d Cir. 2003) ("[T]hat a complainant has had three bites at the apple is not itself a justification for dismissing a complaint with prejudice."). "[I]n most instances … failure to satisfy Rule 9(b) will not automatically lead to a dismissal of the action but, rather, to an opportunity for the pleader to cure the defect." Consequences of Failing to Plead Fraud or Mistake With Particularity, 5A Fed. Prac. & Proc. Civ. § 1300

7

(4th ed.); *see also Hamstead v. W. Va. State Police*, No. 3:18-CV-79, 2019 WL 12313517, at \*5 (N.D. W. Va. Jan. 7, 2019) (declining to determine the futility of an amendment until Plaintiff had an opportunity to file it subject to the conditions set out by the Court).

Here, as described in detail below, Plaintiff's request for leave to amend: (1) would not be futile; (2) was not sought in bad faith; and (3) would not be prejudicial to Defendants. Therefore, Plaintiff respectfully submits that his Motion should be granted in its entirety.

## II.     LEAVE TO AMEND IS WARRANTED

### A.     The SAC demonstrates that amendment is not futile.

Futility is apparent if a proposed amended complaint fails to state a claim under the applicable rules and accompanying standards. *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (A "court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules."). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In considering whether a claim was stated, "a court accepts all of a plaintiff's well-pled allegations as true and liberally construes all reasonable inferences in the plaintiff's favor." *Epstein v. World Acceptance Corp.*, 203 F. Supp. 3d 655, 662 (D.S.C. 2016); *see Covey v. Assessor of Ohio Cnty.*, 777 F.3d 186, 189 (4th Cir 2015) (reversed and remanded order granting Rule 12(b)(6) motion because it "failed to construe the complaint in the light most

favorable to the [plaintiffs]").

In order to state a claim, § 10(b) and Rule 10b-5 require: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Sci. Atlantic, Inc.*, 552 U.S. 148, 157 (2008) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). Relatedly, § 20(a) imposes liability on control persons, which "is derivative of—and dependent upon—liability of a controlled person under [§] 10(b)." *Singer v. Reali*, 883 F.3d 428, 438 (4th Cir. 2018). A plaintiff alleging securities fraud also must plead "with particularity the circumstances constituting fraud," pursuant to Rule 9(b), and the PSLRA. *Id*. These heightened pleading standards do not, of course, require plaintiffs to "ultimately prove their allegations," as that "is an altogether different question." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 50 (2011).

As provided in Plaintiff's Opposition and Objection, Plaintiff has uncovered new evidence since the Complaint was filed, and that new evidence warrants amendment. Specifically, the FDA response to Plaintiff's FOIA requests confirmed, among other things, that PII was, at all relevant times, Fennec's drug product manufacturer whose facilities were so deficient that it caused the Company to receive its *first* CRL on August 11, 2020. *See* ECF No. 55 at 3. The FDA response also revealed that, by the time of the FDA's inspection for PEDMARK which led to the CRL in question, PII had been responsible for no less than three drug recalls since its last FDA inspection in 2018. *Id.* Further, since the filing of the Complaint, Fennec disclosed on November 30, 2021, that it

9

had received a *second* CRL from the FDA resulting from manufacturing deficiencies at those same manufacturing facilities. *Id.* Based on this new information, Plaintiff has revised the SAC in such a way that addresses the issues raised in the Magistrate's Recommendation and adopted by this Court.

1. The SAC adequately alleges material omissions.

The SAC pleads specific facts regarding what, where, when, how, and why statements were allegedly misleading. First, the SAC alleges that, when Fennec contracted with PII, Defendants were on notice that PII had a history of multiple serious deficiencies identified in prior FDA inspections. Defendants also were on notice of PII's inadequate corrective measures after deficiencies were identified and PII's multiple drug recalls since its 2018 FDA inspection. Nonetheless, every quarter during the Class Period, Defendants assured investors that Fennec was spending ample time and money on manufacturing and regulatory expenses for the Company's only drug product and potential source of revenue, which presumably included oversight of PII. Instead, Defendants were not overseeing PII with mock inspections and/or other activities to ensure that PII complied with cGMP standards. By failing to disclose PII's identity, moreover, Defendants left investors unaware of the high risk that the FDA would find the facilities, manufacturing processes and/or corrective measures of Fennec's drug product manufacturer inadequate. That risk materialized on August 10, 2020, when the Company announced receipt of a CRL resulting from the manufacturing deficiencies. This news shocked investors and caused Fennec's stock price to plummet over 44%.

Second, the SAC alleges that, after the first CRL, Defendants assured investors that

10

Fennec would work closely with its manufacturer (PII) and the FDA to ensure the quick resolution of said manufacturing deficiencies. Defendants proceeded to reassure investors that Fennec maintained proper oversight of its third-party manufacturing facilities and was spending ample time and money on remediating the identified deficiencies. But Defendants continued to conceal the high risk of Fennec's manufacturer not being able to correct its ongoing deficiencies. Investors, thus, remained in the dark until November 29, 2021, when Defendants disclosed a *second* CRL related to manufacturing deficiencies at the same manufacturing facility resulting in the first CRL. This news also came as a shock to investors, causing Fennec's stock price to plummet over 59%.

Lastly, the SAC alleges that, at all relevant times, the drug substance manufacturer originally contracted by Fennec did not own a facility capable of manufacturing PEDMARK on a commercial scale. As such, when the acquisition of Avista by Cambrex was announced on November 20, 2018 (if not earlier), Defendants were on notice that the manufacturing of PEDMARK would undergo a site change, requiring an additional six months of new stability data to meet FDA standards. Defendants were also on notice that the stability data could not be generated until the site change occurred and that the site change could take place only after the acquisition finalized around January 2, 2019. Therefore, Defendants had no basis in fact for "targeting U.S. approval of PEDMARK in the second half of 2019." But because Defendants concealed the identity of its drug substance manufacturer (Avista), investors were oblivious to the news of the acquisition, the resulting site change for the manufacturing of PEDMARK, and the inevitable six-month delay. On March 13, 2019, investors were stunned by the news, causing Fennec's

11

stock to fall over 14%.

### 2. The SAC adequately alleges scienter.

In addition, the SAC pleads more particularized facts supporting a strong inference of scienter. The SAC alleges the reasonable standard of care for drug sponsors, like Fennec, in vetting and overseeing third-party manufacturers and asserts the information Defendants would have been aware of based on their due diligence of PII under said standard. The SAC identifies numerous deficiencies and inadequate corrective measures previously observed at PII facilities by the FDA and European regulatory agencies, as well as three product recalls that occurred just since PII's last FDA inspection in 2018. Armed with that information, as alleged, Defendants made specific statements about how much money and time they were spending working with the FDA and the Company's manufacturer in order to submit the PEDMARK NDA and subsequently to resolve the deficiencies identified in the first CRL. And after that CRL, Defendants assured investors that Fennec was on top of the deficiencies and successfully overseeing its highly problematic manufacturer. At the same time, the SAC alleges that Defendants Raykov and Andrade were padding their own pockets – so much so that their compensation accounted for at least 17% of all of Fennec's expenses during the Class Period. In addition, the SAC provides statements by former employees of PII who confirmed how transparent PII had been with Fennec.

As such, the evidence presented by Plaintiff in his Opposition and Objection, and, now, demonstrated in the SAC, supports the conclusion that amendment would not be futile. *See Matrix Cap.*, 576 F.3d at 195 ("While we reach no conclusion as to whether the proposed second amended complaint satisfies the scienter pleading requirements, we

12

believe that the allegations added to that complaint 'changed the analysis [that ought to have been] conducted by the district court.'") (quoting *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008)).

### B. Plaintiff's request for leave to amend is not sought in bad faith.

Plaintiff makes his request for leave to amend the Complaint in good faith. Plaintiff was not required to file a complaint at the time he moved for lead plaintiff appointment. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). Plaintiff filed his first Complaint on February 1, 2021, consistent with the Court-approved Proposed Schedule for the Filing of an Amended/ Consolidated Complaint. *See* ECF Nos. 27, 30. Defendants moved to dismiss this Action for the first time on March 3, 2021, the briefing of which was completed on April 16, 2021. ECF Nos. 40, 46.

On December 16, 2021, Judge Webster issued his Recommendation, providing that the MTD should be granted in full but did not specify whether dismissal should be with or without prejudice. ECF No. 48. After Plaintiff sought clarification as to that part of the Recommendation on December 22, 2021, Judge Webster confirmed that it was with prejudice on January 14, 2022. *See* ECF No. 50; *Chapman,* No. 2:20-cv-00812-LCB-JLW, Text Order (Jan. 14, 2022). Thereafter, on January 24, 2022, Plaintiff objected to the Recommendation, to which Defendants responded on February 3, 2022. ECF Nos. 55-56. Then, on March 2, 2022, without mention of Plaintiff's objections regarding dismissal with prejudice, this Court adopted the Recommendation and granted the MTD with prejudice. ECF No. 57.

As these events show, Plaintiff has not intentionally caused any delays in this highly

13

complex securities litigation. Therefore, this Motion is made in good faith. *See Matrix Cap.*, 576 F.3d at 194-95 ("Plaintiffs' counsel's strategy of not submitting a formal motion to amend and instead arguing that the operative complaint was adequate…does not in any way amount to bad faith, and it did not provide the district court with a basis of declining to examine additional allegations offered in connection with a Rule 59(e) motion to set aside the judgment to permit an amended pleading.").

### C.     Defendants will not suffer any prejudice by the amendment.

"Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." *Laber*, 438 F.3d at 427. With that said, Rule 15(a)(2) does not prescribe any time limit within which a party may apply to the court for leave to amend. Amendments With Leave of Court—Timeliness of Motion to Amend, 6 Fed. Prac. & Proc. Civ. § 1488 (3d ed.). Therefore, this Circuit has unequivocally instructed that "[d]elay alone ... is an insufficient reason to deny the plaintiff's motion to amend." *Laber*, 438 F.3d at 427; *see also Johnson v. Oroweat Foods Co*., 785 F.2d 503, 509-10 (4th Cir. 1986).

"Prejudice is a limited concept…[i]t concerns the party's resource interests in the case." *S.C. State Conf. of NAACP v. McMaster*, No. 3:21-cv-03302-JMC, 2022 WL 408427, at *2 (D.S.C. Feb. 10, 2022) (permitting leave where trial was scheduled to begin in a few weeks). "If an amendment is proposed late enough and requires the opponent to engage in significant new preparation or results in the added expense and the burden of a more complicated and lengthy trial, prejudice may be found." *Smith v. Angelone*, 111 F.3d 1126, 1134 (4th Cir. 1997). Prejudice may also be found when a plaintiff belatedly moves to amend and "[t]he proof required to defend against [his] new claim would be of an

entirely different character than the proof which the defendant had been led to believe would be necessary." *Deasy v. Hill*, 833 F.2d 38, 42 (4th Cir. 1987). However, this Circuit has held that while "[i]t is true that prejudice can result where a proposed amendment raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party … that basis for a finding of prejudice essentially applies where the amendment is offered shortly before or during trial." *Oroweat Foods*, 785 F.2d at 510; *see also BearingPoint*, 576 F.3d at 195 (finding amendment was not prejudicial to the defendants under similar circumstances because "the amendment would occur while discovery [wa]s stayed pursuant to the PSLRA.").

Furthermore, an amendment is not considered prejudicial "if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Laber*, 438 F.3d at 427. Indeed, this Circuit has found amendment unprejudicial when "[p]laintiffs simply seek to add specificity to [the] allegations in a situation where defendants are aware of the circumstances giving rise to the action." *BearingPoint*, 576 F.3d at 195; *see e.g.*, *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (noting that merely adding specificity to allegations generally does not cause prejudice to the opposing party); *see also, Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) ("Because defendant was from the *outset* made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of defendant's case.").

Here, as detailed *supra*, Plaintiff seeks leave to amend in a timely manner. Plaintiff has not belatedly moved to amend his Complaint, as it is still early in the procedural

progression of this Action. There has been no discovery, and no trial date has been set. Further, the SAC does not add any new claims; rather, the primary purpose of the SAC is to add specificity to the already existing claims to address the concerns raised in the Recommendation. As such, Defendants will not suffer any prejudice by this amendment.

## CONCLUSION

Based on the foregoing reasons, Plaintiff respectfully requests that the Court amend or alter its Order and grant him leave to file the attached SAC.

DATED: March 30, 2022

Respectfully Submitted,

**ROCHE FREEDMAN LLP**

*/s/ Ivy T. Ngo*
Ivy T. Ngo
Velvel (Devin) Freedman
Constantine P. Economides
1 SE 3rd Ave., Suite 1240
Miami, Florida 33131
(T): (786) 924-2900
ingo@rochefreedman.com
vel@rochefreedman.com
ceconomides@rochefreedman.com

Eric Rosen
99 Park Avenue, 19th Floor
New York, NY 10016
(T): (646) 350-0527
erosen@rochefreedman.com

*Counsel for Lead Plaintiff and Lead Counsel for the Class*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Jay Chaudhuri
150 Fayetteville St., Suite 980
Raleigh, NC 27601
(T): (919) 890-0560

16

jchaudhuri@cohenmilstein.com

*Counsel for Lead Plaintiff and Liaison Counsel for the Class*

**THE SCHALL LAW FIRM**
Brian Schall (*pro hac vice* forthcoming)
1880 Century Park East, Suite 404
Los Angeles, CA 90067
(T): (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff*

17

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this day a copy of the foregoing document was filed with the Court's CM/ECF system which served the same on all counsel of record. This the 30th day of March 2022.

/s/ Ivy T. Ngo
Ivy T. Ngo

Case 1:20-cv-00812-LCB-JLW     Document 60     Filed 03/30/22     Page 18 of 18