# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

JIM CHAPMAN, Individually and On Behalf of All Others Similarly Situated,

          Plaintiff,

    v.

FENNEC PHARMACEUTICALS INC., ROSTISLAV RAYKOV, ROBERT ANDRADE, CHRIS A. RALLIS, MARCO BRUGHERA, ADRIAN J. HAIGH, KHALID ISLAM, and JODI COOK,

          Defendants.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR POST JUDGMENT RELIEF TO AMEND THE CONSOLIDATED AMENDED COMPLAINT**

Case No. 1:20-cv-00812-LCB-JLW

Judge Loretta Copeland Biggs
Magistrate Judge Joe L. Webster

Defendants Fennec Pharmaceuticals Inc. ("Fennec"), Rostislav Raykov, Robert Andrade, Chris A. Rallis, Marco Brughera, Adrian J. Haigh, Khalid Islam, and Jodi Cook (the "Defendants"), through undersigned counsel, respectfully submit this opposition to Plaintiff's Motion for Post Judgment Relief to Amend the Consolidated Amended Complaint ("Motion"), ECF No. 59.

## INTRODUCTION

Following this Court's entry of an Order, ECF No. 57, adopting the Magistrate Judge's Order and Recommendation, ECF No. 48, dismissing Plaintiff's Amended Complaint with prejudice, and this Court's entry of a corresponding Judgment, ECF No. 58, Plaintiff now asks this Court for post-judgment leave to file a Second Amended Complaint ("SAC"). Plaintiff's Motion is the third time Plaintiff has put forward proposed amendments that would be futile because they do not cure the deficiencies found in the Amended Complaint.[1] Plaintiff's Motion should be denied.

Plaintiff's proposed SAC seeks to add allegations concerning Fennec's resubmission of its New Drug Application ("NDA") for PEDMARK™ in May 2021 (nine months after the end of the Amended Complaint's putative class period) and the FDA's issuance of a second Complete Response Letter ("CRL") in late November 2021 (fifteen months after the end of the Amended Complaint's putative class period). The fact that

---

[1] Plaintiff first put forward proposed amendments in his Motion Requesting Clarification, ECF No. 51, that was denied by the Magistrate Judge in a January 14, 2022 Text Order. Plaintiff also put forward proposed amendments in his Objections to the Magistrate Judge's Order and Recommendation, ECF No. 55.

1

Fennec was unsuccessful in its second attempt to obtain FDA approval for PEDMARK™ says nothing about whether Defendants' pre-November 2021 statements were false when made or Defendants' state of mind at the time they made those statements. Defendants did not guarantee that they could fix the issues identified in the first CRL to the FDA's satisfaction or that the resubmitted NDA would be approved by the FDA.

Plaintiff's proposed SAC seeks to add allegations attributed to three former employees (FE4, FE5 and FE6) of Pharmaceutics International, Inc. ("PII"), Fennec's third-party drug product manufacturer for PEDMARK™. As with the former employees of Avista, Fennec's third-party drug substance manufacturer for PEDMARK™ referenced in the Amended Complaint, these individuals did not work at Fennec, are not alleged to have worked on PEDMARK™ at PII, and are not even alleged to have worked at the PII facility in which PEDMARK™ was manufactured. Moreover, these former PII employees do not allege that they even met or communicated with Defendants, let alone conveyed information that would have put them on notice that Fennec's NDA and resubmitted NDA for PEDMARK™ would not be approved by the FDA.

Plaintiff's proposed SAC seeks to add allegations concerning increased compensation for Fennec's CEO Raykov and CFO Andrade from 2018 to 2021, predominantly option awards, *i.e.*, the right to purchase Fennec shares at an exercise (buy) price. Such awards only have value to Mr. Raykov and Mr. Andrade if the option strike price is lower than the market price for Fennec stock at the time the option is exercised and sold. Many of these options do not vest unless Fennec obtains FDA approval of

2

PEDMARK™ in 2022. The remaining options vest over a three-year period. The proposed SAC does not allege that Mr. Raykov or Mr. Andrade sold stock during the purported class period, and therefore have not profited from these option awards. Indeed, these option awards not only fail to support a strong inference of scienter, they undermine it; Mr. Raykov and Mr. Andrade's profit from these option awards are tied to FDA approval of PEDMARK™, specifically, and the long-term success of Fennec, generally, not any transitory alleged stock price inflation during the putative class period.

Unlike his prior descriptions of proposed amendments, Plaintiff's proposed SAC seeks to extend the putative class period of his lawsuit an additional fifteen (15) months. The Amended Complaint's putative class period ended on August 10, 2020. The proposed SAC's putative class period would end on November 28, 2021. The problem with this proposed extension of the putative class period is that it seeks to include a time period and purported misstatements and events already alleged in a separate securities class action filed nearly two months before Plaintiff's Motion, and would therefore serve as an improper end-run around the lead plaintiff provisions in the Private Securities Litigation Reform Act ("PSLRA").[2] 15 U.S.C. § 78u-4(a)(3). If Plaintiff wanted to represent the

---

[2] On February 9, 2022, plaintiff Jeffrey D. Fisher filed a putative federal securities class action against Fennec and its CEO and CFO, also in this Court, captioned *Fisher v. Fennec Pharmaceuticals Inc. et al.*, Case No. 1:22-cv-115 (M.D.N.C.) ("*Fisher*"). The *Fisher* complaint alleges that the defendants violated Sections 10(b) and 20(a) of the Exchange Act by making materially false and misleading statements or omissions in the period leading up to Fennec's late November 2021 receipt of a CRL for its resubmitted NDA for PEDMARK™, and a class period from May 28, 2021 to November 28, 2021. Motions for appointment as lead plaintiff in the *Fisher* action were due on April 11, 2022. Plaintiff did not file a motion to be appointed lead plaintiff in *Fisher*.

interests of purchasers of Fennec stock in 2021, he should have complied with these provisions and filed a motion for appointment as lead plaintiff, accompanied by a certification, in that action. He did not. Plaintiff should not be permitted to bypass the PSLRA's lead plaintiff provisions by extending the putative class period in this action through a post-judgment amendment to include the putative class period, and its putative class members, alleged in a separate securities class action.

## PROCEDURAL HISTORY

On September 3, 2020, plaintiff Jim Chapman filed a putative class action complaint against Fennec and its CEO and CFO in this Court for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. ECF No. 1. On December 3, 2020, the Court appointed lead plaintiff ("Plaintiff") and lead counsel in this case. ECF No. 25.

On February 1, 2021, Plaintiff filed his Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws ("Amended Complaint"), ECF No. 30, which alleges violations of Sections 10(b) and 20(a) of the Exchange Act, specifically for allegedly false and misleading statements made between December 20, 2018 and August 10, 2020, when Fennec announced that it had received a CRL from the FDA for its first NDA for PEDMARK™. *Id*. at 1.

On December 16, 2021, the Honorable Joe L. Webster recommended dismissal of Plaintiff's Amended Complaint, ECF No. 30, for failure to state a claim under Rule 12(b)(6) and the heightened requirements of the PSLRA. *See* Order & Recommendation of U.S. Magistrate Judge ("Order and Recommendation" or "O&R"), ECF No. 48, at 14–

4

32. The Magistrate Judge conducted a thorough, statement-by-statement analysis of the Amended Complaint, ultimately holding that the Amended Complaint failed to plead with particularity that the challenged statements were false and misleading, *id*. at 19-27, failed to plead that the challenged statements were not protected under the PSLRA safe harbor for forward-looking statements, *id*. at 14-19, and/or failed to plead a strong inference of scienter, *id*. at 27-31.

On December 22, 2021, Plaintiff filed a motion under Federal Rule of Civil Procedure 60(a) to clarify whether the recommendation was for dismissal with prejudice. ECF No. 51. In its motion for clarification, Plaintiff also requested "leave to amend," *id*. at 4, identifying two proposed amendments: (1) the name of Fennec's "drug product manufacturer," and (2) the fact that Fennec "receive[d] a Complete Response Letter [] from the FDA" in November 2021 related to manufacturing deficiencies in connection with Fennec's resubmitted NDA for PEDMARK™. *Id*. at 1.

On January 14, 2022, the Magistrate Judge issued an order denying Plaintiff's motion for clarification, noting that "a dismissal for failure to state a claim under Rule 12(b)(6) is presumed to be both a judgment on the merits and rendered with prejudice." January 14, 2022 Text Order (quoting *McLean v. United States*, 566 F.3d 391, 396 (4th Cir. 2009), *abrogated on other grounds by Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721, 1725 (2020)).

On January 24, 2022, Plaintiff filed Objections to the Magistrate Judge's Order and Recommendation. ECF No. 55. Plaintiff argued that the district court should not

adopt the O&R, and in the alternative, that Plaintiff should be given leave to amend, invoking Federal Rule of Civil Procedure 15(a). *Id.* at 7-10; *see also id.* at 3 ("[D]ismissal should not be with prejudice."); *id.* at 10 ("Plaintiff . . . requests that any dismissal be without prejudice and with leave to file an amended complaint[.]"). Plaintiff relied on three proposed amendments: (1) the name of Fennec's third-party drug product manufacturer; (2) the fact that this third-party drug product manufacturer had three drugs, unrelated to PEDMARK™, recalled since the end of the putative class period; and (3) that on November 30, 2021, Fennec disclosed a second CRL related to a resubmitted NDA for PEDMARK™. *Id.* at 3, 7-10.

On March 2, 2022, this Court conducted a *de novo* review of the O&R before adopting it and dismissing the Amended Complaint with prejudice, ECF No. 57, and entering Judgment, ECF No. 58.

On March 30, 2022, Plaintiff filed this post-judgment Motion for leave to file an amended complaint. ECF No. 59. Plaintiff has not filed an appeal.

## <u>LEGAL STANDARD</u>

A motion to amend "filed after a judgment of dismissal has been entered cannot be considered until the judgment is vacated." *Soliman v. Worldwide Language Res., Inc.*, 698 F. App'x 135, 136 (4th Cir. 2017) (unpublished); *see also Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (en banc) ("the district court may not grant the post-judgment motion [to amend] unless the judgment is vacated pursuant to Rule 59(e) or Fed. R. Civ. P. 60(b)"). "[A] post-judgment motion to amend is evaluated under the same legal standard as a similar

motion filed before judgment was entered—for prejudice, bad faith, or futility." *Laber*, 438 F.3d at 427. Amendment would be futile when the proposed amended complaint would "still fail to survive a motion to dismiss," *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995), or "'satisfy the requirements of the federal rules,'" *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (citation omitted).

## ARGUMENT

**I. PLAINTIFF'S MOTION FOR POST-JUDGMENT RELIEF TO FILE A SECOND AMENDED COMPLAINT SHOULD BE DENIED BECAUSE AMENDMENT WOULD BE FUTILE**

Plaintiff's proposed SAC seeks to add three categories of allegations: (1) Fennec's receipt of a second CRL in late November 2021 in connection with its resubmitted PEDMARK$^{TM}$ NDA; (2) statements from three former employees of PII, Fennec's drug product manufacturer; and (3) additional compensation information for Mr. Raykov and Mr. Andrade. None of these additional allegations would cure the deficiencies in the Amended Complaint. They would not alter the protections of the PSLRA's safe harbor for forward-looking statements, would not result in the SAC pleading with particularity that Defendants' statements were false when made, and would not show Defendants' state of mind at the time they made those statements, or otherwise result in the SAC pleading a strong inference of scienter. Leave to amend should be denied for futility. *Perkins*, 55 F.3d at 917.

7

### A. The Late November 2021 Complete Response Letter

Plaintiff's proposed SAC seeks to add allegations concerning Fennec's resubmission of its NDA for PEDMARK™ in May 2021 (nine months after the end of the Amended Complaint's putative class period) and the FDA's issuance of a second CRL in late November 2021 (fifteen months after the end of the Amended Complaint's putative class period). The fact that Fennec was unsuccessful in its second attempt to obtain FDA approval for PEDMARK™ says nothing about whether Defendants' pre-November 2021 statements were false when made or Defendants' state of mind at the time they made those statements. *See Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 316 (4th Cir. 2004) (affirming dismissal of complaint and denying leave to amend where allegations failed to show "that management was ever informed of" the concerns at the heart of the complaint). And the proposed challenged statements made after the receipt of the August 2020 CRL were not false or misleading because Defendants neither guaranteed Fennec would fix all the issues identified in the CRL nor promised that the FDA would agree its remedial efforts were sufficient, ¶¶1-249.[3] *See Phillips v. LCI Int'l, Inc.,* 190 F.3d 609, 612 (4th Cir. 1999) (statement not false "in context").

After receiving a CRL on August 10, 2020, Mr. Raykov stated that Fennec would "work closely with our manufacturer and the FDA to fully address the issues raised in the letter as expeditiously as possible," ¶14, and in March 2021, stated that Fennec had made

---

[3] All references to "¶__" correspond to the proposed Consolidated Second Amended Class Action Complaint for Violations of the Federal Securities Laws, ECF No. 61-1 ("SAC").

"meaningful progress . . . towards fully addressing the [August 2020 CRL]," ¶159. On May 28, 2021, Fennec stated in a press release that the resubmission of the PEDMARK™ NDA "follows receipt of final minutes from a Type A meeting with the FDA." ¶161. On November 10, 2021, Fennec stated "R&D expenses decreased by $0.2 million" for 3Q21 compared to 3Q20, citing the "shift[] . . . in preparation for the launch of PEDMARK™." ¶170. The proposed SAC seeks to allege that the resubmission of the NDA and subsequent November 2021 CRL transformed statements like these into actionable securities fraud because "the deficiencies still existed at the Cockeysville Facility at the time of the PEDMARK resubmission, which would warrant another Form 483 and another denial of [Fennec's] PEDMARK NDA." ¶162. But none of these statements or any others in the proposed SAC are rendered false by the subsequent CRL. The proposed SAC does not allege that Fennec did not "work closely" with PII and the FDA, does not allege Fennec had not made "meaningful progress" on the issues by March 30, 2021, and does not allege Fennec's R&D expenses did not decrease.

The proposed SAC fails to allege any specifics regarding the issues upon which the second CRL was based (beside "manufacturing deficiencies," ¶117). The proposed allegations do not state whether the same issues identified in the August 2020 CRL, ¶120, were again identified in the November 2021 CRL, ¶117. Without alleging which deficiencies were identified in the November 2021 CRL, the proposed SAC fails to plead that the deficiencies in the August 2020 CRL were not remedied. Regardless, even if the manufacturing facility deficiencies identified in the August 2020 CRL were not remedied

to the FDA's satisfaction and resulted in the November 2021 CRL, it does not mean that Defendants and Fennec's drug product manufacturer did not work hard to correct these deficiencies or did not believe they had corrected them before resubmitting the NDA. *See Acito v. IMCERA Grp.*, 47 F.3d 47, 53 (2d Cir. 1995) (finding that three facility inspections by the FDA that uncovered deficiencies each time "at most[] alleges mismanagement of the plant" and affirming dismissal of complaint); *In re Discovery Labs. Sec. Litig.,* 2007 WL 789432, at *6 (E.D. Pa. March 15, 2007) (plaintiff must allege defendants "did not actually believe … FDA inspection would be successful"), *aff'd*, 276 F. App'x 154 (3d Cir. 2008). This proposed amendment is therefore futile. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (pleading insufficient where allegations "do not permit the court to infer more than the mere possibility of misconduct[.]").

### B.      Former PII Employees 4, 5, and 6

Plaintiff's proposed SAC seeks to add allegations attributed to three former employees of Pharmaceutics International, Inc. ("PII"), Fennec's third-party drug product manufacturer for PEDMARK™. As with the former employees of Avista, Fennec's third-party drug substance manufacturer for PEDMARK™ referenced in the Amended Complaint, the proposed SAC does not allege that these individuals (FE4, FE5, and FE6) worked at Fennec, does not allege that they worked on PEDMARK™ at PII, and does not even allege that they worked at PII's Cockeysville facility in which PEDMARK™ is allegedly manufactured. ¶¶124, 126, 128. Moreover, the proposed SAC does not allege that these former PII employees even met or communicated with Defendants, let alone

10

conveyed information that would have put them on notice that Fennec's NDA and resubmitted NDA for PEDMARK™ would not be approved by the FDA. *See* O&R at 30-31 (plaintiff "does not allege that any of the confidential witnesses communicated with Defendants about their concerns" and did "not even allege that the confidential witnesses had any connection to Defendants."); *see also KBC Asset Mgmt. NV v. DXC Tech. Co.*, 19 F.4th 601, 609 (4th Cir. 2021) (affirming dismissal, finding former employee statements that "lack [] direct contact with Defendants weakens the inference of scienter, as [the CEO] and [CFO] may have been unaware of the problems, the causes of the problems, or the extent of the problems.").

FE4 worked at PII for 13 months, beginning just two months <u>prior</u> to the August 2020 CRL and left four months <u>prior</u> to the November 2021 CRL. ¶124. FE4 is not alleged to have had any interaction with Fennec, to have worked on PEDMARK™, or to have even worked at the Cockeysville facility. *See id.* In short, he has nothing to say about Fennec or PEDMARK™. FE4 only provides general statements about how PII conducted business, stating that "joint working group[s]" were formed between PII and "its clients," *id.*, but never alleges PII and Fennec actually had one of these joint working groups, who were its members, or how it functioned. FE4's statement that there was "absolutely no lack of transparency" between PII and its clients is equally uninformative. *Id.* Indeed, FE4 does not say if or how this "transparency" provided Defendants with any information that contradicted Defendants' statements or put them on notice that the NDA or resubmitted NDA would not be approved by the FDA. FE4 further states that every drug sponsor will

11

do "extensive due diligence" on any "third-party manufacturer," ¶¶124, 195, but does not say if Fennec did such due diligence, who at Fennec conducted the due diligence, how Fennec conducted such due diligence, what information Fennec obtained from this due diligence, or whether this information contradicted Defendants' statements or put them on notice that PII's PEDMARK™-related inspection would fail.

FE5 is not alleged to have had any interaction with Fennec, to have worked on PEDMARK™, or to have even worked at the Cockeysville facility. ¶126. In short, he too has nothing to say about Fennec or PEDMARK™. Instead, FE5 merely says that PII had unidentified regulatory "problems," that were "corrected before FE4 left," *i.e.*, before June 2021—five months before the November 2021 CRL. ¶¶126, 124.

FE6 worked at PII from October 2017 to August 2021, leaving PII three months before the November 2021 CRL. ¶128. FE6 is not alleged to have had any interaction with Fennec, to have worked on PEDMARK™, or to have even worked at the Cockeysville facility. *Id*. While FE6 says that certain unnamed Fennec employees met on an unspecified "regular basis," worked "closely" with PII, and that certain unnamed Fennec employees "c[a]me to the manufacturing site" to discuss manufacturing, FE6 does not claim to have participated in any of those interactions. *Id*. FE6, therefore, does not (and cannot) say if or when Fennec or PII were aware of deficiencies with respect to the manufacturing of PEDMARK™ before the first CRL in August 2020 that put them on notice that the PEDMARK™ NDA would not be approved. Similarly, FE6 does not (and cannot) say if or when Fennec or PII were aware that deficiencies identified in the August 2020 CRL

12

were not corrected to the FDA's satisfaction before the second CRL in November 2021 or put them on notice that the resubmitted NDA would not be approved.

FE6's statements actually undermine Plaintiff's entire theory by showing Fennec and PII endeavored to correct the deficiencies identified in the August 2020 CRL. Regardless, as with the Amended Complaint, the proposed allegations in the SAC indicate at most negligence, not fraud. *See* O&R at 30 (more plausible inference is that the "failure to more closely monitor" PII was "innocent or negligent."); *Hirtenstein v. Cempra, Inc.*, 348 F. Supp. 3d 530, 562 (M.D.N.C. 2018) (more plausible inference was that defendants acted "innocently or negligently" with monitoring issues that arose at third-party drug manufacturer), *aff'd*, 816 F. App'x 747 (4th Cir. 2020); *KBC Asset Mgmt.*, 19 F.4th at 608 ("malicious" inference must be "at least as compelling as any opposing innocence inference" to avoid dismissal) (citation omitted).

### C. CEO and CFO Compensation

The proposed SAC does not allege any suspicious stock sales by Defendants during the putative class period to infer scienter. *In re Herbalife, Ltd. Sec. Litig.*, 2015 WL 12734014, at *4 n.8 (C.D. Cal. July 28, 2015) (lack of insider sales "cuts against an inference of scienter."). Instead, it seeks to add allegations concerning increased compensation for Fennec's CEO Raykov and CFO Andrade from 2018 to 2021. The proposed SAC alleges that Mr. Raykov's compensation increased from $1.07 million in 2018 to $3.4 million between in 2021 and that Mr. Andrade's increased from $669,099 in 2018 to $1.49 million in 2021. ¶137. But the majority of both Mr. Raykov and Mr.

13

Andrade's compensation was in the form of stock option awards; *i.e.*, the right to purchase shares at an exercise (buy) price.[4]  Such awards only have value to Mr. Raykov and Mr. Andrade if the option strike price is lower than the market price for Fennec stock at the time the option is exercised and sold.  Many of these options do not vest unless Fennec obtains FDA approval of PEDMARK™ in 2022.  The remaining options vest monthly over a three-year period.[5]  The proposed SAC does not allege that Mr. Raykov or Mr. Andrade sold stock during the purported class period, and therefore have not profited from these option awards.  Indeed, these option awards not only fail to support a strong inference of scienter, they undermine it; Mr. Raykov and Mr. Andrade's profits from these option awards are tied to FDA approval of PEDMARK™, specifically, and the long-term success of Fennec, generally, not any transitory alleged stock price inflation during the putative class period.  *See Phillips*, 190 F.3d at 622 (to show motive, "plaintiff must demonstrate some sale of 'personally-held stock' or 'insider trading[.]'").

---

[4] Mr. Raykov and Mr. Andrade received reasonable base salary increases between 2018-2021.  Mr. Raykov's base salary increased from $350,000 to $458,402 and Mr. Andrade's base salary increased from $250,000 to $332,075.  ¶137.

[5] The December 20, 2021 option awards "all vest conditionally upon FDA approval of PEDMARK™ in calendar year 2022."  Form 10-K 2021 (cited at ¶137, n. 113) at 74 n. 1. https://www.sec.gov/ix?doc=/Archives/edgar/data/1211583/000155837022002334/fencf-20211231x10k.htm#Item11.  The May 15, 2020 and June 2, 2021 option awards vest 1/3 one year after the grant date and the remainder vest monthly at a rate of 1/24th for the next two years.  *See id*.

14

**II. PLAINTIFF IS NOT ENTITLED TO POST-JUDGMENT RELIEF TO FILE THE PROPOSED SECOND AMENDED COMPLAINT BECAUSE IT IS AN END-RUN AROUND THE PSLRA LEAD PLAINTIFF PROCESS IN A SEPARATE SECURITIES CLASS ACTION**

Unlike his prior descriptions of proposed amendments, Plaintiff's proposed SAC seeks to extend the putative class period of his lawsuit an additional fifteen (15) months, from a class period ending on August 10, 2020 to a class period ending on November 28, 2021. This proposed extension would include a time period, purported misstatements, and events already at issue in a separate, pending securities class action filed nearly two months before Plaintiff's Motion, and would serve as an improper end-run around the lead plaintiff provisions in the PSLRA in that separate action.

On February 9, 2022, a securities class action complaint was filed against Fennec, Mr. Raykov, and Mr. Andrade in this Court, captioned *Fisher v. Fennec Pharmaceuticals, Inc.*, *et al.*, Case No. 1:22-cv-115 (M.D.N.C. Feb. 9, 2022) ("*Fisher*"). The *Fisher* complaint asserts a putative class period stretching from May 28, 2021 to November 28, 2021 and concerns Fennec's resubmission of its PEDMARK™ NDA and subsequent disclosure of a late November 2021 CRL related to manufacturing deficiencies. *Compare Fisher* Complaint at ¶¶24-38 (alleging actionable statements related to November 2021 CRL) with ECF No. 61-1 at ¶¶159-173 (proposed SAC amendments challenging statements arising from November 2021 CRL). Before the SAC's proposed amendment, the putative class period in the Amended Complaint in this action was from December 20, 2018 to August 10, 2020 and concerned Fennec's original PEDMARK™ NDA and first CRL, received on August 10, 2020.

15

The lead plaintiff appointment provisions of the PSLRA require securities class action plaintiffs to provide "[e]arly notice to class members" by publishing in a "widely circulated national business-oriented publication" a notice advising of the action. 15 U.S.C. § 78u-4(a)(3)(A)(i). Plaintiff Fisher did so. The PSLRA's lead plaintiff appointment provisions also require "that, not later than 60 days after the date on which notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). In *Fisher*, the deadline to file motions for appointment as lead plaintiff was April 11, 2022. Plaintiff did not file a motion for appointment as lead plaintiff in *Fisher*. If Plaintiff wanted to represent the interests of purchasers of Fennec stock in 2021, as his proposed SAC seeks to do, he should have filed a motion for appointment as lead plaintiff in *Fisher*, accompanied by a required certification.[6] He did not. Plaintiff cannot bypass the PSLRA's lead plaintiff provisions and usurp the role of lead plaintiff by extending the putative class period in this action through a post-judgment amendment to include the putative class period, and its putative class members, already alleged in *Fisher*. *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 2008 WL 2795141, at *4 (S.D.N.Y. July 18, 2008) (denying leave to amend where lead plaintiff tried to "usurp lead plaintiff status over claims which are properly in front of other judges").

---

[6] The PSLRA also requires that "[e]ach plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification." 15 U.S.C. § 78u-4(a)(2)(A).

16

## CONCLUSION

For the foregoing reasons, the Court should refuse to vacate the Judgment and deny Plaintiff's Motion.

Respectfully submitted this 20th day of April 2022.

**WYRICK ROBBINS YATES & PONTON LLP**

By:  /s/ Lee M. Whitman
Lee M. Whitman (N.C. Bar No. 20193)
Samuel A. Slater (N.C. Bar No. 43212)
lwhitman@wyrick.com
sslater@wyrick.com
4101 Lake Boone Trail, Suite 300
Raleigh, North Carolina 27607
Telephone: (919) 781-4000
Facsimile: (919) 781-4865

**WILSON SONSINI GOODRICH & ROSATI, P.C.**

By:  /s/ Gregory L. Watts
Gregory L. Watts (WA Bar No. 43995)
John C. Roberts Jr. (WA Bar No. 44945)
Tyre L. Tindall (WA Bar No. 56357)
gwatts@wsgr.com
jroberts@wsgr.com
ttindall@wsgr.com
701 Fifth Avenue, Suite 5100
Seattle, Washington 98104
Telephone: (206) 883-2500
Facsimile: (206) 883-2699

*Attorneys for Defendants Fennec Pharmaceuticals Inc., Rostislav Raykov, Robert Andrade, Chris A. Rallis, Marco Brughera, Adrian J. Haigh, Khalid Islam, and Jodi Cook*

17

# CERTIFICATE OF COMPLIANCE

Defendants, by and through undersigned counsel, certify that this Opposition to Plaintiff's Motion for Post Judgment Relief to Amend the Consolidated Amended Complaint complies with the word-count limit in LR 7.3(d)(1). The word count of the Opposition is 4,385 words.

This 20th day of April 2022.

WILSON SONSINI GOODRICH & ROSATI, P.C.

/s/ Gregory L. Watts
Gregory L. Watts (WA Bar No. 43995)
gwatts@wsgr.com
701 Fifth Avenue, Suite 5100
Seattle, Washington 98104
Telephone: (206) 883-2500
Facsimile: (206) 883-2699

*Attorney for Defendants Fennec Pharmaceuticals Inc., Rostislav Raykov, Robert Andrade, Chris A. Rallis, Marco Brughera, Adrian J. Haigh, Khalid Islam, and Jodi Cook*

# CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this day a copy of the foregoing document was filed with the Court's CM/ECF system which served the same on all counsel of record.

This 20th day of April 2022.

**WYRICK ROBBINS YATES & PONTON LLP**

By: /s/ Lee M. Whitman
Lee M. Whitman (N.C. Bar No. 20193)
lwhitman@wyrick.com
4101 Lake Boone Trail, Suite 300
Raleigh, North Carolina 27607
Telephone: (919) 781-4000
Facsimile: (919) 781-4865