UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JIM CHAPMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FENNEC PHARMACEUTICALS INC., ROSTISLAV RAYKOV, ROBERT ANDRADE, CHRIS A. RALLIS, MARCO BRUGHERA, ADRIAN J. HAIGH, KHALID ISLAM, and JODI COOK,<br><br>Defendants. | Case No. 1:20-cv-00812-LCB-JLW<br>Judge Loretta Copeland Biggs<br>Magistrate Judge Joe L. Webster<br><br>**REPLY IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR POST JUDGMENT RELIEF TO AMEND THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |

Plaintiff respectfully submits this Reply in Further Support of his Motion for Post Judgment Relief to Amend the Consolidated Amended Class Action Complaint ("Motion"). ECF No. 59.[1] In opposing, Defendants argue that: (1) the proposed amendment is futile; and (2) a follow-up class action pursuing similar §10(b) claims based on the same new information previously identified by Plaintiff and submitted as support for extending the Class Period in the SAC to November 28, 2021, filed on February 9, 2020, prevents Plaintiff from amending the Complaint. *See* Opposition to Plaintiff's Motion, ECF No. 63 ("Opposition" or "Opp."). Defendants are wrong on both counts.

First, Plaintiff has provided sufficient grounds for amendment. Mem. at 8-16. Contrary to Defendants' characterization of Rule 15(a)(2) amendments, under Fourth Circuit caselaw, Plaintiff does "not face a heavy burden here, as futility encompasses only 'insufficient or frivolous' amendments." *Plymouth Cnty. Ret. Sys. v. Evolent Health, Inc.*, 2020 WL 6875183, at *3 (E.D. Va. June 5, 2020) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.3d 503, 510 (4th Cir. 1986)). This is the ***first*** time Plaintiff is formally seeking leave to amend,[2] and the proposed amendment is serious. It adds new facts unknown to Plaintiff when the Complaint was filed, as well as new statements about when and how much Fennec was spending on manufacturing-related expenses, which contained sufficiently substantive information to trigger Defendants'

---

[1] Unless otherwise noted, capitalized terms have the meaning ascribed in the Memorandum of Law in Support of the Motion ("Memorandum" or "Mem.") (ECF No. 60); all emphasis is added; and internal citations are omitted. "¶" references are to the SAC. ECF No. 61-2.

[2] Contrary to Defendants' assertions, Magistrate Judge Webster did not previously deny Plaintiff's proposed amendments. *See* Opp., n.1. Indeed, his January 14, 2022 Order explicitly addressed Defendants' "concerns that Plaintiff's motion is an attempt to seek amendment of his pleadings," concluding that the Court "need not address the issue" as Plaintiff had confirmed he "[wa]s not seeking any relief other than clarification of the dismissal."

obligation to disclose bad facts known to them, including those related to the Company's product manufacturer, that could have prevented or delayed PEDMARK's launch. As detailed in the Memorandum, such new facts include, *inter alia*, known past regulatory issues with Fennec's product manufacturer, PII, whose deficient facilities were the cause of the *first* CRL on August 11, 2020, and the events involving those same deficient facilities which caused the *second* CRL on November 30, 2021. Such facts help refute many of Defendants' MTD arguments and demonstrate that they made materially misleading statements to Fennec investors with scienter – the crux of Plaintiff's claims.

Second, neither the PSLRA nor the caselaw governing amendments, support preventing Plaintiff from amending due to the filing of *Fisher v. Fennec Pharmaceuticals, Inc., et al.,* Case No. 1:22-cv-115 (M.D.N.C. Feb. 9, 2022) ("*Fisher*"), which asserts claims arising from related further developments after the original PSLRA notice had been issued, a lead plaintiff had been appointed, and an amended pleading had been filed in this case. The Lead Plaintiff Order (ECF No. 25) granted Plaintiff sole authority to direct the litigation on behalf of the Class, including defining the appropriate scope of the Class Period and determining whether and when to seek leave to amend. *See Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 n.13 (2d Cir. 2004) (The PSLRA empowers the lead plaintiff "to exercise control over the litigation **as a whole**."); *In re Facebook, Inc., IPO Sec. and Derivative Litig.*, 2013 WL 4399215, at *2 (S.D.N.Y. Aug. 13, 2013) (The PSLRA "gives the court-appointed lead plaintiffs the **sole authority** to make strategic decisions on behalf of the class."). Denying Plaintiff his right to amend and expand the Class Period based on new related information simply because a follow-up class action has been filed, arising from the same legal and factual nucleus as the Complaint, but with a

2

narrower class period, would render the PSLRA's lead plaintiff provisions meaningless.

Because the SAC's allegations are neither insufficient nor frivolous, and are related to those in the Complaint, Plaintiff's request for leave to amend was not made in bad faith nor prejudicial to Defendants. Accordingly, Plaintiff's Motion should be granted in its entirety.

## **ARGUMENT**

### A. In the Fourth Circuit, a futile Rule 15 amendment is one that is "clearly insufficient or frivolous."

Defendants argue that a Rule 15 amendment requires the SAC to "survive a motion to dismiss" or "satisfy the requirements of the federal rules." Opp. at 7. Not so.

While "it may be within the trial court's discretion to deny leave to amend when it is clear that a proposed claim cannot withstand a Rule 12(b)(6) motion…it does not follow that every plaintiff seeking leave to amend claims **must** demonstrate that the claims can withstand a Rule 12(b)(6) motion." *Payne v. Ford Motor Credit Co. LLC*, 2020 WL 6450280, at *2 (D. Md. Nov. 3, 2020) (emphasis in original). Defendants' standard "would render superfluous the Fourth Circuit's definition of a futile claim as one that is 'clearly insufficient or frivolous on its face' … and would run contrary to the Fourth Circuit's [and the Supreme Court's] well-established 'policy to liberally allow amendment in keeping with the spirit of [Rule] 15(a).'" *Id.*; *see Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded.").

Specifically in the securities fraud context, the Fourth Circuit has described the Rule 15 futility analysis as whether "the allegations added to that complaint 'changed the analysis [that ought to have been] conducted by the district court," **not** "whether the proposed second

3

amended complaint satisfies the scienter pleading requirements." *Matrix Cap. Mgt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 195 (4th Cir. 2009) (quoting *Steinburg v. Chesterfield Cnty. Planning Comm'n,* 527 F.3d 377, 390 (4th Cir. 2008)). That is not "a heavy burden … as futility encompasses only 'insufficient or frivolous' amendments." *Evolent*, 2020 WL 6875183 at *3.

## B. Plaintiff's amendment is serious and should be allowed so that the case may be resolved on its merits.

As in *Matrix*, Plaintiff here "seek[s] to add specificity to scienter allegations in a situation where defendants are aware of the circumstances giving rise to the action." 576 F.3d at 95. Such specificity includes allegations relating to Defendants continued misleading statements and omissions after the FDA issued the first CRL and conveyed to them the manufacturing deficiencies which caused the denial, and to Defendants' state of mind based on their own statements about working closely with the FDA and the Company's manufacturer and its funding for R&D and manufacturing activities leading up to each CRL. *See KBC Asset Mgt. NV v. 3D Sys. Corp.*, 2016 WL 3981236, at *9 (D.S.C. July 25, 2016) ("'[T]he most powerful evidence of scienter is the content and context of [defendants'] statements themselves,' and when a defendant is 'specifically asked, directly and repeatedly' about these core operations, denials of any issues can support a strong inference of scienter."); *Kiken v. Lumber Liquidators Holdings, Inc.*, 155 F. Supp. 3d 593, 606 (E.D. Va. 2015) (finding scienter based, in part, on Defendants' "several public statements about the importance of their Chinese operations and its singular impact on the company's overall growth" as such statements were "relevant to their state of mind").

In further support of scienter, the SAC includes statements from former employees of

4

PII who, *inter alia*, confirm that Fennec was "directly involved with the R&D team and manufacturing team" working on PEDMARK at PII, including coming to its manufacturing facility and discussing "the manufacturing operations, all the logistics." ¶¶128, 204. Allegations like these have been the basis of approved Rule 15(a)(2) amendments as well as denials of Rule 12(b)(6) motions. *See e.g., Evolent*, 2020 WL 6875183 at *3 (granting leave to amend where new allegations were based on statements from a confidential witness who worked for one of the defendant company's "largest clients"); *Plymouth Cnty. Ret. Sys. v. Evolent Health, Inc.*, 2021 WL 1439680, at *35-*36 (E.D. Va. Mar. 24, 2021) (finding scienter satisfied based "on the Individual Defendants' corporate positions" and statements from a confidential witness despite "there appear[ing] to be no motive for fraud" because "there was a 'presence of red flags, coupled with' significant problems for [the defendant company], which 'provide substantial weight to an inference that' the Individual Defendants 'must have been aware'").

Further, because Fennec's **only** potential revenue source was PEDMARK, and compliance with cGMP was critical to FDA approval, it defies credulity to suggest that the Individual Defendants were unaware of what the Company was spending money on – or not – to ensure that PEDMARK was being manufactured according to FDA standards. *See Reese v. Malone,* 747 F.3d 557, 569 (9th Cir. 2014) (It is "reasonable to conclude that high-ranking corporate officers have knowledge of the critical core operation of their companies.").[3]

---

[3] Defendants' reliance on *Acito v. IMCERA Grp., Inc.*, is misplaced because there, the alleged misstatements related to "less than 2% of Pitman's 1991 sales and less than 1% of IMCERA's total sales" and a plant that was "one of over thirty IMCERA business locations and produced only ten of the 1000 products manufactured by IMCERA." 47 F.3d 47, 52 (2d Cir. 1995). Here, the alleged misstatements related to **all** of Fennec's future sales and the **only** facility manufacturing PEDMARK for commercial use.

Against this backdrop of knowing that Fennec had no prospect of significant revenues, until and unless it could comply with the FDA's commercial manufacturing standards, allocating 17% of its available funds to compensating Defendants Andrade and Raykov supports scienter. Moreover, Andrade specifically touted Fennec's "tight financial strategy … rais[ing] only enough capital to reach milestones" and Raykov stated that "the strength of our cash balance is of utmost importance to us while we remain on track to complete our submission of the NDA," thus portraying to investors that they were aware of what they were spending money on—or not—including quality audits and/or mock inspections. ¶¶106-07, 111, 189.

Regarding falsity, based on the Recommendation (ECF No. 48), adopted by the Court (ECF No. 57), Plaintiff seeks to add new statements about when and how much Fennec was spending on R&D expenses (primarily comprised of manufacturing and regulatory expenses) leading up to each CRL. ¶¶141, 148, 152, 165, 167, 170, 172, 216-17. As such, these misstatements contain enough substantive information about Fennec's manufacturing to trigger Defendants' obligation to disclose bad facts that could have prevented or delayed PEDMARK's launch, including what they were choosing not to spend money on. *See Sec. Police & Fire Pros. of Am. Ret. Fund v. Pfizer, Inc.,* 2012 WL 6771941, at *7 (D.N.J. Dec. 6, 2012), *report and recommendation adopted*, 2012 WL 6765711 (D.N.J. Dec. 21, 2012) (granting leave to amend where "the new allegations … demonstrates a substantial likelihood that a reasonable … investor would have viewed Defendants' affirmative statements … as being material by affecting the total mix of information available to investors when making investment decisions."); *Pub. Pen. Fund Grp. v. KV Pharm. Co.,* 679 F.3d 972, 989 (8th Cir. 2012) (holding district court abused its discretion in denying leave to amend where, as here, the "new

6

allegations supported [plaintiffs'] contention that [defendant] made false and misleading statements"). Defendants' attempt to mischaracterize the SAC as alleging that they "guarantee[d] that they could fix the issues identified in the first CRL to the FDA's satisfaction or that the resubmitted NDA would be approved by the FDA" (Opp. at 2) should be rejected.[4] Likewise, Defendants' misapplication of their purported authority to the facts set forth in the SAC in order to argue the futility of the proposed amendment should be rejected.[5]

Although Plaintiff informally requested leave to amend in opposing Defendants' MTD (*see* ECF No. 45) ("MTD Opposition") and when objecting to the Recommendation (*see* ECF No. 55) ("Objection"), this is the first time Plaintiff is formally moving pursuant to Rule 15(a)(2). The Court thus has never substantively addressed the new factual allegations or materially misleading statements. Since these new allegations change the scienter and falsity analyses made by the Court, judgment should be vacated, and amendment should be allowed. Otherwise, the claims brought on behalf of Plaintiff and other Class members will have been disposed of on technicalities rather than on the merits in contravention of federal policy. *See*

---

[4] *See Frater v. Hemispherx Biopharma, Inc.*, 996 F. Supp. 2d 335, 348-49 (E.D. Pa. Jan. 24, 2014) (Defendants' claim that the Complaint's allegations turned on likelihood of approval is "irrelevant to whether Hemispherx systemically misled investors about the key components of [ ] NDA and the nature of FDA feedback …"); *Shanawaz v. Intellipharmaceutics Int'l Inc.*, 348 F. Supp. 3d 313, 324-25 (S.D.N.Y. 2018) ("At issue here are not Defendants' opinions about the NDA's prospects before the FDA, but [their] allegedly false descriptions of the contents of the NDA itself.").

[5] The alleged misstatements in *In re Discovery Lab'ys Sec. Litig.*, include "[w]e believe" statements, and thus for scienter, plaintiff had to allege how defendants "did not actually believe" in those statements. 2007 WL 789432, at *2 (E.D. Pa. Mar. 15, 2007), *aff'd*, 276 F. App'x 154 (3d Cir. 2008). In contrast, Plaintiff alleges no such opinion statements as false or misleading in the SAC. The scienter analysis here turns on, *inter alia*, whether Defendants knew or should have known what Fennec was choosing not to spend money on in overseeing PII's manufacturing while making statements about how much and when the Company was spending on R&D, which included manufacturing expenses.

*Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006).

### C. Plaintiff's management of this litigation is procedurally proper.

Defendants argue that this Motion "is an end-run around the PSLRA lead plaintiff process in a separate securities class action." Opp. at 15. Nonsense.

Plaintiff has been diligently prosecuting this case since being appointed as lead on behalf of the putative class, initially defined as investors who acquired Fennec securities between February 11, 2020 and August 10, 2020. *See* ECF No. 25. Consistent with his responsibility to oversee the case, Plaintiff undertook an extensive investigation, analyzing the facts and assessing all potential claims available to the Class prior to filing the Complaint on February 1, 2021. Adding to the initial complaint, the Complaint alleges Defendants made materially misleading statements concerning, *inter alia*, Fennec's ability to achieve FDA approval of PEDMARK in light of its failure to diligently oversee its manufacturers and rectify deficiencies. *See* ECF No. 30. And based on then-available information, Plaintiff determined that the Class Period should be expanded back to December 20, 2018. *See id.*

As noted in Plaintiff's MTD Opposition, Clarification Motion (ECF No. 50), Reply in support thereof (ECF No. 54), Objection, and Memorandum, the alleged fraud had continued, and additional revelations had come to light after the Complaint was filed. Plaintiff consistently noted his intention to amend as new information became known, including but not limited to: (1) on April 2, 2021, based on Defendants' admission in Fennec's FY2020 10-K filed on March 30, 2021 that the alleged risks had materialized (*see* MTD Opposition at n.11); and (2) on December 22, 2021, based on Defendants' November 29, 2021 disclosure that Fennec had received a second CRL, revealing that the deficiencies identified in the Complaint had not yet

8

been remedied (*see* ECF No. 51 at 4). Less than a month after Defendants' MTD was granted, Plaintiff filed this Motion, attaching the SAC which expanded the Class Period based on the previously identified new information. *See* ECF No. 60-2.

However, before Plaintiff had an opportunity to amend, *Fisher* was filed on February 9, 2022, asserting claims arising from that new information on behalf of investors who purchased Fennec securities between May 28, 2021 and November 28, 2021 ("*Fisher* Class Period"). *See Fisher*, ECF No. 1. Despite Defendants' misguided attempt to second-guess Plaintiff's management of litigation, and their mischaracterization of the identified post-filing statements and actions as not being related to the allegations in the Complaint, Plaintiff has demonstrated that the proposed amendments, including the extended Class Period, are based on newly learned information directly related to the alleged fraud, thus warranting leave to amend, rather than requiring Plaintiff to pursue a wholly separate case.

First, as alleged in the SAC, Defendants continued to mislead investors regarding Fennec's management of PII, and the deficiencies identified at its facilities. *See, e.g.*, ¶¶14-18, 112-18, 165-73, 218-22. Accordingly, the SAC does not "significantly" alter the case such that a new PSLRA notice is required. *See In re Thornburg Mortg., Inc. Sec. Litig.,* 629 F. Supp. 2d 1233, 1240 (D.N.M. 2009). Rather, it arises from and is related to the same undisclosed major manufacturing risks at issue all along, illustrating that "[l]itigation is an ongoing process" that evolves over time.[6] *Id.* Moreover, due to the procedural infancy of this case and Plaintiff's

---

[6] Defendants' reliance on *In re Am. Int'l Grp., Inc. Sec. Litig.*, 2008 WL 2795141 (S.D.N.Y. July 18, 2008) is unavailing. There, the lead plaintiff sought to amend to include claims concerning "different time periods, different divisions of the company, different management, different

9

repeated expressions of intent to amend to add this new information (providing Defendants notice), Defendants will not be prejudiced by the expanded Class Period.

Second, nothing in the PSLRA requires a plaintiff to abandon the case he was appointed to lead, in order to move for lead in a later filed case arising from events that relate to, but occurred after, his complaint was filed. Rather, the PSLRA was enacted to promote the exact type of considered analysis and decision-making exhibited by Plaintiff here. *See Hevesi*, 366 F.3d at 82 n.13 ("[T] main purpose of having a lead plaintiff [is] to empower one or more investors … to exercise control over the litigation **as a whole**.").

Lastly, not permitting Plaintiff to amend because of *Fisher* would prevent him from vigorously prosecuting this litigation on behalf of the Class he was appointed to represent, because certain members likely did not buy securities during the *Fisher* Class Period.

For the reasons raised here, and in the Memorandum, the Motion should be granted.

DATED: May 4, 2022                    Respectfully Submitted,

**ROCHE FREEDMAN LLP**

*/s/ Ivy T. Ngo*
Ivy T. Ngo
Velvel (Devin) Freedman
Constantine P. Economides
1 SE 3rd Ave., Suite 1240
Miami, Florida 33131
(T): (786) 924-2900

---

alleged objectives, different disclosures, and different shareholders" and extend the class period in the operative complaint by over three years. *Id.* at *1-*2. Further, the lead plaintiff waited to seek leave to amend, despite knowing the basis for the proposed amendment before moving for class certification and stipulating to a scheduling order. *Id.* Here, in contrast, the SAC alleges that the same Defendants continued to make similar misstatements and omissions about what they were doing and how much they were spending to manage the same manufacturer and prepare for a supplemental FDA inspection of the same facility which had been found deficient and caused the first CRL.

10

ingo@rochefreedman.com
vel@rochefreedman.com
ceconomides@rochefreedman.com

Eric Rosen
99 Park Avenue, 19th Floor
New York, NY 10016
(T): (646) 350-0527
erosen@rochefreedman.com

*Counsel for Lead Plaintiff and Lead Counsel for the Class*

**COHEN MILSTEIN SELLERS
& TOLL PLLC**
Jay Chaudhuri
150 Fayetteville St., Suite 980
Raleigh, NC 27601
(T): (919) 890-0560
jchaudhuri@cohenmilstein.com

*Counsel for Lead Plaintiff and Liaison Counsel for the Class*

**THE SCHALL LAW FIRM**
Brian Schall (*pro hac vice* forthcoming)
1880 Century Park East, Suite 404
Los Angeles, CA 90067
(T): (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff*

11

**<u>CERTIFICATE OF COMPLIANCE</u>**

Plaintiff, by and through undersigned counsel, certifies that this Reply in Support of Plaintiff's Motion for Post Judgment Relief to Amend the Consolidated Amended Class Action Complaint complies with the word-count limit in LR 7.3(d)(1). The word count of this Reply is 3,124 words.

This 4th day of May 2022.

<u>*/s/ Ivy T. Ngo*</u>
Ivy T. Ngo

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this day a copy of the foregoing document was filed with the Court's CM/ECF system which served the same on all counsel of record.

This 4th day of May 2022.

/s/ *Ivy T. Ngo*
Ivy T. Ngo